**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Phone:          (312) 222-9350
Facsimile:     (312) 527-0484

**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar No. 269109)
kspelman@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071
Phone:          (213) 239-5100
Facsimile:     (213) 239-5199

Attorneys for Defendant
Kellogg Sales Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA KENNARD, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>KELLOGG SALES COMPANY,<br><br>Defendant. | Case No. 3:21-cv-7211-WHO<br><br>The Honorable William H. Orrick III<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Hearing Date:  January 19, 2022<br>Hearing Time:  2:00 p.m.<br>Location:          Remote |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on January 19, 2022 at 2:00 p.m., or as soon thereafter as the Court is available, Defendant Kellogg Sales Company will appear before the Honorable William H. Orrick III and will, and hereby does, move to dismiss Plaintiff Angela Kennard's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a plausible claim on which relief can be granted.

Kellogg's Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, any additional briefing on this subject (including Kellogg's reply brief), and the evidence and arguments that will be presented to the Court at the hearing on this matter.

DATED: November 16, 2021                    JENNER & BLOCK LLP

By:        /s/   Dean N. Panos
                 Dean N. Panos

Attorneys for Defendant
Kellogg Sales Company

1

## **TABLE OF CONTENTS**

2   INTRODUCTION ............................................................................................................1

3   BACKGROUND ............................................................................................................2

4   ARGUMENT ...............................................................................................................4

5   I.   Plaintiff Has Not Plausibly Alleged That the Term "Veggie" Is Deceptive or Misleading. ...........5

6        A.   The term "veggie" refers to the absence of meat, not the presence of vegetables...............5

7        B.   The term "veggie" is not a reference to a product's "primary ingredient."........................8

8   II.  The Packaging, Viewed as a Whole, Conclusively Dispels Any Alleged Deception. ...................9

9   III. Plaintiff Has Not Plausibly Alleged That Kellogg Violated Any FDA Regulations...................13

10       A.   Plaintiff has not alleged a plausible violation of 21 C.F.R. § 101.18(b). .........................13

11       B.   Plaintiff has not alleged a plausible violation of 21 C.F.R. § 102.5. ...............................14

12  IV.  Plaintiff Has Not Stated a Plausible Breach-of-Warranty Claim...................................15

13       A.   Plaintiff has not stated a plausible claim for breach of express warranty........................15

14       B.   Plaintiff has not stated a plausible claim for breach of implied warranty. .......................17

15  V.   Plaintiff Has Not Plausibly Alleged Any Entitlement to Equitable Relief. ...................17

16  CONCLUSION............................................................................................................20

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09-395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)....................................................13

*Adams v. Cole Haan, LLC*,
   No. 20-913, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ..................................................19

*Ang v. Whitewave Foods Co.*,
   No. 13-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013)..................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................4, 5

*Becerra v. Dr. Pepper Seven/Up, Inc.*,
   No. 17-5921, 2018 WL 3995832 (N.D. Cal. Aug. 21, 2018) (Orrick, J.)..............................6

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ................................................................................ *passim*

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ..............................................................................................17

*Bohac v. Gen. Mills, Inc.*,
   No. 12-5280, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) (Orrick, J.)............................17

*Cheslow v. Ghirardelli Chocolate Co.*,
   445 F. Supp. 3d 8 (N.D. Cal. 2020) ......................................................................................8

*Chin v. Gen. Mills, Inc.*,
   No. 12-2150, 2013 WL 2420455 (D. Minn. June 3, 2013).................................................16

*Clark v. Am. Honda Motor Co.*
   528 F. Supp. 3d 1108, 1114-15 (C.D. Cal. 2021) ........................................................19, 20

*Coe v. Gen. Mills, Inc.*,
   No. 15-5112, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) .......................................14, 15

*Culver v. Unilever U.S., Inc.*
   No. 19-9263, 2021 WL 2943937 (C.D. Cal. June 14, 2021)........................................10, 11

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ..............................................................................................12

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ....................................................................................................9

*Gibson v. Jaguar Land Rover N. Am., LLC*,
    No. 20-769, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ................................................18

*Gitson v. Trader Joe's Co.*
    No. 12-1333, 2015 WL 9121232 (N.D. Cal. Dec. 1, 2015).................................................7

*Gubala v. Allmax Nutrition, Inc.*,
    No. 14-9299, 2015 WL 6460086 (N.D. Ill. Oct. 26, 2015) ........................................13, 14

*Gudgel v. Clorox Co.*,
    514 F. Supp. 3d 1177 (N.D. Cal. 2021) ...........................................................................12

*Hairston v. S. Beach Beverage Co.*,
    No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ...............................................6

*Henderson v. Gruma Corp.*,
    No. 10-4173, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ...............................................8

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ..........................................................................................5

*Huynh v. Quora, Inc.*
    508 F. Supp. 3d 633, 640 (N.D. Cal. 2020) ......................................................................19

*Knowles v. Arris Int'l PLC*,
    847 F. App'x 512 (9th Cir. 2021) .......................................................................................9

*Lima v. Post Consumer Brands, LLC*,
    No. 18-12100, 2019 WL 3802885 (D. Mass. Aug. 13, 2019) ......................................14, 15

*In re MacBook Keyboard Litig.*,
    No. 18-2813, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ........................................18, 19

*Manchouck v. Mondelēz Int'l, Inc.*,
    No. 13-2148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013).......................................12, 13

*McGinity v. Procter & Gamble Co.*
    No. 20-8164, 2021 WL 3886048 (N.D. Cal. Aug. 31, 2021) .............................................11

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) .......................................................................................5, 7, 9

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
    No. 16-1442, 2018 WL 1616053 (C.D. Cal. Mar. 8, 2018)...............................................15

*Qualcomm Inc. v. Compal Elecs., Inc.*,
  283 F. Supp. 3d 905 (S.D. Cal. 2017) ................................................................. 19

*Red v. General Mills, Inc.*,
  No. 215-02232, 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) .......................... 17

*Red v. Kraft Foods, Inc.*
  No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2021) ................... 11, 12, 13

*Romero v. Flowers Bakeries, LLC*,
  No. 14-5189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) .................................. 13

*Sensible Foods, LLC v. World Gourmet, Inc.*,
  No. 11-2819, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ................................... 6

*Solak v. Hain Celestial Grp., Inc.*,
  No. 17-704, 2018 WL 1870474 (N.D.N.Y Apr. 17, 2018) .............................. 8, 12

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ...................................................................... *passim*

*Stuart v. Cadbury Adams USA, LLC*,
  458 F. App'x 689 (9th Cir. 2011) .......................................................................... 5

*Sugarawa v. Pepsico, Inc.*,
  No. 08-1335, 2009 WL 1439115 (E.D. Cal. May 21, 2009) ................................. 8

*Turner v. Sony Interactive Entm't LLC*,
  No. 21-2454, 2021 WL 5177733 (N.D. Cal. Nov. 8, 2021) ............................... 16

*Varela v. Walmart, Inc.*,
  No. 20-4448, 2021 WL 2172827 (C.D. Cal. May 25, 2021) .............................. 13

*Videtto v. Kellogg USA*,
  No. 08-1324, 2009 WL 1439086 (E.D. Cal. May 21, 2009) ................................. 5

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................................... 16, 17

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009) .............................................................................. 17

*Weiss v. Trader Joe's Co.*,
  838 F. App'x 302 (9th Cir. 2021) ..................................................................... 9, 10

*Williams v. Beechnut Nutrition Corp.*,
  185 Cal. App. 3d 135 (1986) ............................................................................... 16

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ...........................................................................12, 13

*Workman v. Plum, Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) ...........................................................10, 13

**Statutes**

Cal. Bus. & Profs. Code §§ 17200 *et seq.* ...................................................................4

Cal. Bus. & Profs. Code §§ 17500 *et seq.* ...................................................................4

Cal. Civ. Code §§ 1750 *et seq.*....................................................................................4

Cal. Comm. Code § 2313(1)(a)....................................................................................16

Cal. Comm. Code § 2317..............................................................................................16

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 3:21-CV-7211-WHO

## INTRODUCTION

Many consumers—for health, religious, environmental or other reasons—do not eat meat.  To appeal to those consumers, Kellogg sells veggie burgers, as well as other meat substitutes like veggie dogs and "veggie chik'n," under its Morningstar Farms brand.  Although Kellogg sells a wide variety of meat substitutes under the Morningstar Farms brand, it consistently uses the term "veggie" (which is shorthand for "vegetarian") to describe those products.  By doing so, Kellogg signals to consumers that these products are meatless alternatives to well-known comfort foods like hamburgers, hot dogs, breakfast sausages, and chicken nuggets.  Plaintiff does not claim that Kellogg's Morningstar Farms products contain meat.  Rather, Plaintiff claims that it is misleading to use the term "veggie" to describe Morningstar Farms meat substitutes because those products are primarily made of "grain or oil" instead of "vegetables."  Plaintiff's theory of deception is implausible, and this Court should dismiss her lawsuit.

When used to describe a meat substitute, the term "veggie" connotes the absence of meat, not the presence of vegetables.  *See* "Veggie Burger," WIKIPEDIA, *available at* https://bit.ly/3mJm2c2 (last visited Nov. 16, 2021) ("A veggie burger is a burger patty that does not contain meat.").  Countless restaurants— from vegetarian-focused restaurants like Veggie Grill to mainstream chains like the Cheesecake Factory— sell "veggie burgers" that include a wide range of ingredients, including beans, mushrooms, and brown rice.  Indeed, there are thousands of recipes for veggie burgers that feature a limitless variety of plant-based ingredients.  It is accordingly implausible that a reasonable consumer would interpret the phrase "veggie burger" to mean that a meat substitute—let alone a packaged, frozen product like Kellogg's Morningstar Farms products—consists primarily of vegetables as opposed to other plant-based ingredients.

What a reasonable consumer *would* believe is that Kellogg's Morningstar Farms products do not contain any meat—which is true.  As the Ninth Circuit has made clear, a plaintiff cannot simply ignore the "prevalent understanding" of a labeling term and rely instead on her own idiosyncratic, unreasonable assumptions about the meaning of that term.  *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019) ("*Becerra II*").  Just as a reasonable consumer would not believe that "diet" soft drinks promise weight loss or that soy milk comes from a cow, a reasonable consumer would not interpret the term "veggie burger" to mean that a product consisted predominantly of vegetables.

Even assuming for argument's sake that a reasonable consumer *might* interpret the term "veggie"

to mean that a meat substitute consists primarily of vegetables (which no reasonable consumer would do), that does not establish that Kellogg's packaging is affirmatively misleading.  At most, it establishes that the term "veggie" is ambiguous and susceptible of multiple interpretations.  Here, however, the packaging dispels any purported ambiguity by clarifying that Kellogg's Morningstar Farms products include more "grain and oil" than vegetables.  Under similar circumstances, many courts have found that the absence of an affirmative misrepresentation, combined with clarifying language elsewhere on the packaging, defeats any plausible claim of deception.  This Court should do the same here.

Leaving aside these core flaws, Plaintiff's claims suffer from many other defects.  Although she attempts to hitch a claim under the UCL's "unlawful" prong to alleged violations of two FDA labeling regulations, that claim fails because Kellogg's labeling does not violate either regulation.  Her breach of warranty claims fail—not only because Kellogg's labeling does not warrant that the Morningstar Farms product contain a certain amount of vegetables, but also because she has not plausibly alleged that those products are unfit for consumption (as is required to state a claim for breach of the implied warranty of merchantability).  And while Plaintiff attempts to seek equitable relief on behalf of the putative class, she cannot do so because she has not plausibly alleged that she lacks an adequate legal remedy, as is required to seek equitable relief under California's consumer protection statutes.  *See generally Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  Plaintiff's claims are fatally flawed, and this Court should dismiss her lawsuit with prejudice.

## **BACKGROUND**

Kellogg sells vegetarian meat substitutes—including veggie burgers, veggie dogs, veggie sausage patties, and the like—under its Morningstar Farms brand.  Those products, which do not contain meat, are sold in packaging that uses the term "veggie" to modify the name of the product (*e.g.*, "veggie dogs"):

1

2

3

4

5

6

7

8

9

10

11

12

13

14



15  Compl. ¶ 14.  The packaging also lists all ingredients in order of predominance, as required by the FDA:

16

17  ## Ingredients

18  Water, wheat gluten, corn syrup solids.Contains 2% or less of

19  methylcellulose, dextrose, salt, egg whites, natural flavors, brown sugar

20  (sugar, molasses), hydrolyzed vegetable protein (corn protein, soy

     protein), hydrolyzed corn protein, soy protein isolate, carrageenan,

21  mustard flour, onion powder, maltodextrin, spices, xanthan gum,

22  hydrolyzed soy protein, autolyzed yeast, paprika, garlic powder,

     soybeans, disodium guanylate, disodium inosinate, hydrolyzed torula

23  and brewers yeast, wheat, gum arabic, hydrolyzed vegetable protein

24  (corn gluten, soy protein, wheat gluten), soybean oil, thiamin

     hydrochloride, paprika extract for color, autolyzed yeast extract, lactic

25  acid, nonfat milk, red 40, sunflower oil, citric acid, blue 1.

26

27  *Id.* ¶ 15.

28

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 3:21-CV-7211-WHO

According to Plaintiff, "reasonable consumers understand and expect that products marketed as 'veggie' are made from vegetables, rather than beans or other legumes, grains, tofu, oil, or anything else."[1] *Id.* ¶ 12.   Relying on that allegation, Plaintiff claims that Kellogg's use of the term "veggie" on its Morningstar Farms products is misleading—not because those products contain meat (which they do not), but because they are primarily made with "grain or oil" as opposed to vegetables. *Id.* ¶¶ 15–16.   Plaintiff also alleges that the labeling of the Morningstar Farms products violates a handful of FDA regulations that govern the naming of foods, including 21 C.F.R. § 101.18 and 21 C.F.R. § 102.5. *See* Compl. ¶¶ 19–20.

Based on these allegations, Plaintiff asserts claims under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, as well as claims for breach of express warranty and breach of the implied warranty of merchantability. *See* Compl. ¶¶ 41–86.   Plaintiff asserts these claims on behalf of herself and a putative class of California consumers. *See id.* ¶ 32.   Plaintiff seeks a variety of legal and equitable remedies on behalf of the putative class, including damages, restitution, and injunctive relief. *See id.* ¶ 87 (Prayer for Relief).

## **ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Facts indicating the "mere *possibility* of misconduct" fall short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 679 (emphasis added). Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action

---

[1] Notably, the only source Plaintiff cites for this allegation is the Merriam-Webster Online Dictionary, which defines the term "veggie burger" to mean "a patty chiefly of vegetable-derived protein used as a meat substitute"—not a patty made primarily of vegetables. *See id.* ¶ 12 n.1.   Plaintiff fails to mention that the same dictionary defines the term "veggie" to mean either "vegetable" or "vegetarian" (*i.e.*, free of meat). *See* "Veggie", MERRIAM-WEBSTER ONLINE DICTIONARY, *available at* https://bit.ly/3vJM0yN (last visited Nov. 16, 2021).   And in any event, many other dictionaries specifically differentiate veggie burgers from those made with meat. *See, e.g.*, "Veggie Burger," OXFORD ENGLISH DICTIONARY, *available at* https://bit.ly/3pCa3P7 (last visited Nov. 16, 2021) (defining a "veggie burger" as a "flat savoury cake or patty resembling a hamburger but made with vegetable protein, soya, etc. rather than meat"); "Veggie Burger," CAMBRIDGE DICTIONARY, *available at* https://bit.ly/3o1jQMs (last visited Nov. 16, 2021) (defining a "veggie burger" as "a type of food similar to a hamburger but made without meat, by pressing together small pieces of vegetables, seeds, etc. into a flat, round shape").

"across the line from conceivable to plausible." *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570).

"Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and *common sense.*'" *Becerra II*, 945 F.3d at 1228 (quoting *Iqbal*, 556 U.S. at 679) (emphasis added).  In light of that guidance, courts have regularly dismissed lawsuits where common sense belies the allegations in the complaint.  *See, e.g.*, *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690–91 (9th Cir. 2011) (affirming dismissal of false advertising lawsuit that "def[ied] common sense"); *Videtto v. Kellogg USA*, No. 08-1324, 2009 WL 1439086, at *4 (E.D. Cal. May 21, 2009) (dismissing false advertising lawsuit without leave to amend where the plaintiff's allegations would require the court to "ignore . . . common sense").

## I.  <u>Plaintiff Has Not Plausibly Alleged That the Term "Veggie" Is Deceptive or Misleading.</u>

Because Plaintiff's claims are premised on allegedly "deceptive or misleading marketing," she must "demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021).  To satisfy that "reasonable consumer" standard, Plaintiff must "show that members of the public are *likely* to be deceived" by Kellogg's labeling.  *Becerra II*, 945 F.3d at 1228 (citation omitted) (emphasis added).  This "requires more than a mere possibility that [the] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003)).  Notably, the standard is not that of a "least sophisticated consumer" or an "unwary consumer." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citation and emphasis omitted).  "Rather, the reasonable consumer standard requires a *probability* that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Becerra II*, 945 F.3d at 1228–29 (emphasis added) (citation and internal quotation marks omitted).  Plaintiff's allegations do not satisfy this standard.

### A.  The term "veggie" refers to the absence of meat, not the presence of vegetables.

Plaintiff's theory of deception is premised on her allegation that "reasonable consumers understand and expect that products marketed as 'veggie' are made from vegetables, rather than beans or other legumes, grains, tofu, oil, or anything else." Compl. ¶ 12.  But this allegation is entirely implausible, as reasonable consumers understand terms like "veggie burger," "veggie dog," or "veggie patty" to mean that the products are made with plant-based ingredients and not just "vegetables." *See generally Sensible*

*Foods, LLC v. World Gourmet, Inc.*, No. 11-2819, 2012 WL 566304, at *6 (N.D. Cal. Feb. 21, 2012) ("It is simply implausible—indeed, it strains the boundaries of the English language—to say that products made primarily from potatoes are not made of 'veggies.'"). That interpretation is consistent with the prevalent usage of the term "veggie," as well as dictionary definitions of the term "veggie burger." *See supra* at 4 n.1. And it is also consistent with the fact that "veggie" products are meat substitutes designed to appeal to the segment of consumers who, for one reason or another, do not eat meat. Put simply, the term "veggie" connotes the absence of meat, not the presence of vegetables.

As the Ninth Circuit has made clear, Plaintiff cannot simply ignore the "prevalent understanding" of the term "veggie" in this context and seek to hold Kellogg liable based on her own idiosyncratic and implausible understanding of that word. *Becerra II*, 945 F.3d at 1230; *see also Hairston v. S. Beach Bev. Co.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) ("Plaintiff's selective interpretation of individual words or phrases from a product's labeling cannot support a CLRA, FAL, or UCL claim."). Court after court has applied that common-sense principle to dismiss similar lawsuits premised on a consumer's unreasonable interpretation of a labeling statement.

*Becerra* is particularly instructive. There, the plaintiff—represented by Plaintiff's counsel here—alleged that the term "diet," as used on the labeling of Diet Dr. Pepper, was misleading because "the term 'diet' communicates weight loss or weight management." *Becerra v. Dr. Pepper Seven/Up, Inc.*, No. 17-5921, 2018 WL 3995832, at *1 (N.D. Cal. Aug. 21, 2018) (Orrick, J.) ("*Becerra I*"). This Court dismissed her lawsuit, holding that it was "not likely that a reasonable consumer would interpret 'diet' in the manner Becerra suggests." *Id.* at *4. Although the plaintiff relied on dictionary definitions of "diet" and purported survey findings to allege that consumers associated the term "diet" with weight loss, this Court rejected those arguments. *See id.* As the Court explained, "it is not plausible that reasonable consumers would look at 'Diet Dr. Pepper' as associated with weight loss, separate and apart from the specific context of the product." *Id.* "Instead, consumers would view that Diet Dr. Pepper is a 'diet' product relative to regular Dr. Pepper." *Id.* (citation and internal quotation marks omitted).

The Ninth Circuit affirmed. Like this Court, the Ninth Circuit agreed that the term "diet" is a "relative claim about the calorie content of that soft drink compared to the same brand's 'regular' (full-caloric) option," such that "no reasonable consumer would assume that Diet Dr. Pepper's use of the term

'diet' promises weight loss or management." *Becerra II*, 945 F.3d at 1228.  The court specifically rejected the plaintiff's argument that, "regardless of the common *understanding* of the word, dismissal was still improper because she alleged a plausible *misunderstanding* of the word." *Id.*  The court emphasized that it had "previously affirmed dismissal of claims based on similar unreasonable assumptions," and it held that the possibility that "some consumers may unreasonably interpret the term differently does not render the use of 'diet' in a soda's brand name false or deceptive." *Id.* at 1229–30.

Similarly, in *Gitson v. Trader Joe's Co.*, the plaintiffs claimed that the term "soymilk" was misleading because "people might mistake soymilk for actual milk from a cow."  No. 13-1333, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015).  The court concluded that the plaintiffs had "not articulated a plausible explanation for how 'soymilk' is misleading," as a "reasonable consumer (indeed, even the least sophisticated consumer) does not think soymilk comes from a cow."[2]  *Id.*  "To the contrary," the court explained," "people drink soymilk in lieu of cow's milk."  *Id.*; *see also Ang v. Whitewave Foods Co.*, No. 13-1953, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013) ("[I]t is simply implausible that a reasonable consumer would mistake a product like soymilk or almond milk with dairy milk from a cow.").

Just as no reasonable consumer would believe that "diet" soda promotes weight loss or that soy milk comes from cows, no reasonable consumer would interpret the term "veggie," as used to describe a frozen, packaged meat substitute, to imply the exclusion of "beans or other legumes, grains, tofu, [or] oil."  Compl. ¶ 12.  Rather, a reasonable consumer would conclude that a "veggie" product was free of meat and was designed to substitute for familiar meat-based foods like hamburgers, hot dogs, and chicken nuggets.  Indeed, the labeling of Kellogg's Morningstar Farms products—which uses phrases like "wake up and smell the veggie protein" to describe veggie bacon strips, "heat, bun, done" to describe veggie burgers, and "frankly delicious" to describe veggie dogs—plainly attempts to highlight the analogy between Kellogg's vegetarian meat substitutes and their meat-based counterparts, rather than their specific ingredients.

Consistent with that labeling, the challenged products are free of meat (*i.e.*, "veggie"-tarian) and are comprised primarily of plant-based ingredients.  It is accordingly not deceptive for Kellogg to describe

---

[2] Notably, the Ninth Circuit specifically cited this holding in *Moore* to highlight the "sheer implausibility of Plaintiffs' alleged interpretation" of the challenged labeling and to emphasize that "a consumer of any level of sophistication could not reasonably interpret [the challenged] label as Plaintiffs assert."  *Moore*, 4 F. 4th at 884 (citing *Gitson*, 2015 WL 9121232, at *1).

them as "veggie" products, and the fact that Plaintiff "unreasonably assumed" that Kellogg's products were comprised primarily of vegetables, as opposed to grains or oils, "does not make it so." *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 17 (N.D. Cal. 2020) (relying on *Becerra II* to dismiss lawsuit alleging that consumers equated "white chips" with white chocolate); *see Becerra II*, 945 F.3d at 1229–30.

### B.     The term "veggie" is not a reference to a product's "primary ingredient."

Plaintiff attempts to sidestep this argument by alleging that "[c]onsumers understand ingredient call-outs in product names for meat-alternatives to comprise the product's primary ingredient," such that "consumers understand a product marketed as a 'bean-burger' to be made primarily from beans, and a 'tofurkey' dog to be made primarily from tofu." Compl. ¶ 11. But this allegation is entirely implausible—as evidenced by Plaintiff's failure to cite any source that supports her unreasonable interpretation of this term. To the contrary, well-accepted authorities (including leading dictionaries and Wikipedia) make clear that the absence of meat is the defining characteristic of a "veggie" (*i.e.*, vegetarian) product. *See supra* at 1 & 4 n.1. In some cases, a manufacturer may highlight the presence of *specific* plant-based ingredients by using terms like "bean burger" or "tofurkey dog." But that does not change the fact that the term "veggie" refers broadly to *all* plant-based meat substitutes, rather than those made primarily of "vegetables."

Indeed, common sense—which this Court must apply in ruling on a motion to dismiss—belies Plaintiff's categorical allegation that consumers understand "ingredient call-outs" to refer to a product's "primary ingredient." In some instances, a reasonable consumer may understand an "ingredient call-out" to mean that the ingredient is present in the product, but not necessarily that it is the *primary* ingredient.[3] In other cases, a consumer would not understand the labeling to include the highlighted "ingredient" at all. *See, e.g.*, *Sugarawa v. Pepsico, Inc.*, No. 08-1335, 2009 WL 1439115, at *3 (E.D. Cal. May 21, 2009)

---

[3] Indeed, multiple courts have applied this reasoning in dismissing lawsuits premised on similar "veggie" representations. *See, e.g.*, *Solak v. Hain Celestial Group, Inc.*, No. 17-704, 2018 WL 1870474, at *3 (N.D.N.Y Apr. 17, 2018) (dismissing lawsuit alleging that the term "veggie straws" was misleading and holding that this product name "makes no claim as to the amount or proportion of 'Veggie' products incorporated in the Straws"); *Henderson v. Gruma Corp.*, No. 10-4173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (dismissing lawsuit alleging that product was mislabeled as being made "with garden vegetables" and holding that this "labeling statement does not claim a specific *amount* of vegetables in the product, but rather speaks to their presence in the product, which is not misleading").

(dismissing lawsuit alleging that the term "crunch berries" implied the presence of fruit).  Given that the term "veggie" has a well-established meaning in this context, it is implausible that a reasonable consumer would believe that the term "veggie" differentiated the product from one made with beans, tofu, or other plant-based ingredients.  *See generally Weiss v. Trader Joe's Co.*, 838 F. App'x 302, 303 (9th Cir. 2021) ("[A] reasonable consumer does not check her common sense at the door of the store.").

Indeed, consistent with the common usage of the term "veggie" to describe vegetarian products, Kellogg uses that term to describe even those Morningstar Farms products that highlight the presence of legumes and other plant-based ingredients.  For example, it uses the phrase "veggie burgers" on the labeling of its Spicy Black Bean Burgers and Mediterranean Chickpea Burgers.  *See* "Burgers," Morningstar Farms, *available at* https://bit.ly/3km7oFV (last visited Nov. 16, 2021).  It similarly labels its Chipotle Black Bean Crumbles as a "veggie meal starter."  *See* "Meal Starters," Morningstar Farms, *available at* https://bit.ly/2Ysnnum (last visited Nov. 16, 2021).  Those products—which are sold on the very same shelves as the Morningstar Farms products Plaintiff challenges in this lawsuit (*see* Compl. ¶ 13)—make clear to consumers that Kellogg uses the term "veggie" to refer to meatless products generally, as opposed to products made with "vegetables" in particular.  This Court should reject Plaintiff's implausible and artificial distinction between "veggies" and other plant-based ingredients.

## II.   **The Packaging, Viewed as a Whole, Conclusively Dispels Any Alleged Deception.**

Even assuming for argument's sake that the term "veggie" suggested the presence of vegetables when viewed in isolation, that would not render Plaintiff's claims of deception plausible.  As the Ninth Circuit has repeatedly made clear, an advertisement is not deceptive if any "ambiguity" that the plaintiff "would read into any particular statement is dispelled by the [advertisement] as a whole."  *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995); *see also, e.g.*, *Moore*, 4 F.4th at 882 (affirming dismissal of false advertising lawsuit and holding that claim was not plausible "as a matter of law" where "other available information . . . would quickly dissuade a reasonable consumer" from her purported interpretation of the labeling); *Knowles v. Arris Int'l PLC*, 847 F. App'x 512, 513 (9th Cir. 2021) (similar).  Indeed, as the Ninth Circuit recently explained, *Freeman* stands for the common-sense proposition that "product packaging should be examined in its full context because it would be unreasonable to cherry-pick discrete statements to prove deception."  *Weiss*, 838 F. App'x at 303.

Here, even assuming for argument's sake that the term "veggie" might arguably be *ambiguous* as to the product's ingredient content, the labeling resolves that ambiguity by stating all of the product's ingredients in order of predominance, as required by the FDA.  Compl. ¶ 15.  Indeed, many courts have acknowledged that when a label contains no affirmative misrepresentations and the remainder of the packaging dispels any purported ambiguity, the labeling is not deceptive as a matter of law.

*Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015), is instructive.  There, the plaintiff alleged that the defendant's fruit purees were mislabeled because the packaging depicted images of certain ingredients—such as pumpkin, pomegranate, quinoa, and yogurt—even though the products primarily consisted of apple, banana, or pear puree.  *Id.* at 1034-35.  The court dismissed this claim, reasoning that "the labels contain no affirmative misrepresentations and that all of the items pictured are actually present in the product."  *Id.* at 1035.  Although the plaintiff asserted that the packaging misled consumers into believing that the highlighted ingredients were the most predominant ingredients in the product, the court rejected this argument and emphasized that "a reasonable consumer would not simply view pictures on the packaging of a puree pouch or box of fruit bars and assume that the size of the items pictured directly correlated with their predominance in the blend."  *Id.*  Even if the label was arguably *ambiguous* as to the ingredients in each product, the court explained, "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA."  *Id.*

Many other courts throughout the Ninth Circuit have adopted this precise reasoning in dismissing lawsuits premised on arguably ambiguous labeling claims. For example, in *Culver v. Unilever United States, Inc.*, the court dismissed a lawsuit alleging that the labeling of Maille Dijon mustard—which included the phrases "Paris," "Depuis 1747," and "Que Maille"—falsely implied that the mustard was made in France, even though it was actually made in Canada.  No. 19-9263, 2021 WL 2943937, at *1 (C.D. Cal. June 14, 2021).  As the court explained, "the allegedly misleading words do not by themselves actually indicate the country where the Products are manufactured," and it noted that "the translation of the French words into English does not suggest the place of manufacture."  *Id.* at *8.  "Thus," the court reasoned, "the pleadings do not delineate a basis, other than unfounded supposition, for a consumer to believe that the Products were made in France."  *Id.*  The court accordingly concluded that the use of "French words" on the packaging was "not enough to make the labels so misleading that a reasonable consumer—who had a

1    question as to the country of origin of the Products—would not be expected to look at the full packaging

2    for the answer, which was clearly and correctly provided on the rear label." *Id.* at *9.

3          Similarly, in *McGinity v. Procter & Gamble Co.*, the court dismissed a lawsuit alleging that the

4    labeling of Pantene Pro-V "Nature Fusion" shampoo, which included an image of an avocado next to a

5    green leaf, falsely implied that the shampoo was "absent of any synthetic and non-natural ingredients."

6    No. 20-8164, 2021 WL 3886048, at *1 (N.D. Cal. Aug. 31, 2021).  In so holding, the court explained that

7    "P&G makes no claim as to what ingredients are not included, or the amounts of certain ingredients

8    included, in its products by using the words 'Nature Fusion' and the accompanying image of an avocado

9    on a green leaf." *Id.* at *2.  The court also noted that "P&G's ingredients list included on the back of its

10   packaging confirms that the products contain both natural and synthetic ingredients." *Id.* at *3.  "Thus,"

11   the court explained, the plaintiff had "not sufficiently alleged how a reasonable consumer would be

12   deceived into believing that the products did not contain any synthetic ingredients given the express

13   inclusion of such ingredients on the product[] packaging." *Id.*

14         And in *Red v. Kraft Foods, Inc.*, the court dismissed a claim—brought by one of Plaintiff's

15   attorneys here—alleging that the labeling of Vegetable Thins crackers was misleading because it "boasts

16   that the crackers are made with real vegetables and depicts vegetables," which purportedly created the false

17   impression that the product "contains a *significant amount* of vegetables."  No. 10-1028, 2012 WL

18   5504011, at *3 (C.D. Cal. Oct. 25, 2012) (citation and internal quotation marks omitted).  In so holding,

19   the court concluded that it "strains credulity to imagine that a reasonable consumer will be deceived into

20   thinking that a box of crackers . . . contains huge amounts of vegetables simply because there are pictures

21   of vegetables and the true phrase 'Made with Real Vegetables' on the box." *Id.* at *4.  In so holding, the

22   court rejected the plaintiffs' suggestion that the vegetable-themed representations amounted to affirmative

23   misrepresentations, and it emphasized that a reasonable consumer would not "read a true statement on a

24   package and . . . assume things about the products *other than* what the statement actually says." *Id.* at *3.

25         That reasoning applies with equal force here.  The packaging of Kellogg's Morningstar Farms

26   products does not state that the products are made with a certain amount of vegetables.  Although the

27   labeling includes phrases designed to emphasize the presence of plant-based ingredients (such as "veggie"

28   and "the power of plants," *see* Compl. ¶ 13), it does not specify *which* plant-based ingredients each product

contains.  If a consumer nonetheless wanted to know which plant-based ingredients the product contained, he or she could look at the back of the package, which accurately states which ingredients each product includes.  Absent any *affirmative* misrepresentation as to the amount or type of vegetables present in the product, Plaintiff has not stated a plausible claim of deception.

Plaintiff will likely rely on the Ninth Circuit's opinion in *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), to argue that Kellogg cannot use the ingredient list to correct a misleading claim on the front of the package.  But in contrast to *Williams*, where the packaging prominently displayed fruits that were not present in the product, the front labels of Kellogg's Morningstar Farms products include no representations whatsoever regarding the specific plant-based ingredients present in each product.  That fact alone renders *Williams* distinguishable.  *See, e.g.*, *Manchouck v. Mondelēz Int'l, Inc.*, No. 13-2148, 2013 WL 5400285, at *3 (N.D. Cal. Sept. 26, 2013) (distinguishing *Williams* on the basis that the labeling "contained pictures of different fruits not actually contained in the product").  As other courts have made clear, it is not misleading to highlight the presence of vegetables—or even *specific* vegetables—if those vegetables appear in the product.  *See Red*, 2012 WL 5504011, at *3-4; *Solak*, 2018 WL 1870474, at *3 (dismissing lawsuit alleging that the phrase "Garden Veggie Straws" and images of fresh vegetables falsely exaggerated the product's vegetable content and noting that the labeling of Garden Veggie Straws "truthfully captures the fact that Defendant uses vegetable-based products in the Straws' recipe").

Moreover, as the Ninth Circuit has made clear, *Williams* stands for the narrow and uncontroversial proposition that "*if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (emphasis in original).  But where, as here, there is "no deceptive act to be dispelled" and the ingredient list "does not contradict other representations or inferences on [the] packaging," a manufacturer can use disclosures elsewhere on the packaging—such as the FDA-mandated ingredient list—to eliminate any purported ambiguity.  *Id.*; *see also, e.g., Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1187 (N.D. Cal. 2021) ("[T]here is no affirmative misrepresentation or deception on the product's label.  Without a deceptive act or statement, *Williams* does not apply.").  Consistent with *Ebner*, many district courts in the Ninth Circuit have limited *Williams* to cases involving affirmative misrepresentations and have declined to apply it to

cases where the packaging is only arguably ambiguous.[4]  Here too, because the labeling of the Morningstar Farms products contains no affirmative misrepresentations and truthfully discloses all ingredients present in the product, Plaintiff has not stated—and cannot state—a viable claim against Kellogg.

### III.   Plaintiff Has Not Plausibly Alleged That Kellogg Violated Any FDA Regulations.

In addition to alleging that Kellogg's use of the term "veggie" to describe its Morningstar Farms products is deceptive, Plaintiff also claims that it violates two FDA regulations—21 C.F.R. § 101.18(b) and 21 C.F.R. § 102.5(b)—that govern the naming of foods. *See* Compl. ¶¶ 19-20; *see also id.* ¶ 62 (relying on these alleged violations as a predicate for a claim under the UCL's "unlawful" prong). But Plaintiff has not come close to articulating a violation of either regulation.

### A.   Plaintiff has not alleged a plausible violation of 21 C.F.R. § 101.18(b).

The FDA regulations provide that the "labeling of a food which contains two or more ingredients may be misleading by reason . . . of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all ingredients, even though the names of all such ingredients are stated elsewhere in the labeling."  21 C.F.R. § 101.18(b).  Plaintiff alleges that "Kellogg violates that provision in that it designates the Products as 'VEGGIE,' *i.e.*, vegetable" even though "they are primarily composed of non-vegetable ingredients, like wheat gluten and oil."  Compl. ¶ 19.  But courts have made clear that a product's name violates this regulation only when it "mislead[s] consumers into believing the listed ingredients are the sole components of the [food]."  *Ackerman v. Coca-Cola Co.*, No. 09-395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010); *see also Gubala v. Allmax Nutrition, Inc.*, No. 14-9299, 2015 WL 6460086, at *6 (N.D. Ill. Oct. 26, 2015) (noting that 21 C.F.R. § 101.18 "require[s] that a food not be labeled in such a way as to lead consumers to believe that it is made solely of one ingredient when it is made of multiple ingredients").

---

[4] *See, e.g.*, *Manchouck*, 2013 WL 5400285, at *3 (distinguishing *Williams* and noting that the "plaintiff's complaint . . . does not concern an affirmative misrepresentation"); *Workman*, 141 F. Supp. 3d at 1037 ("Here, in contrast to *Williams*, the packaging at issue contained no affirmative misrepresentation . . . ."); *Red*, 2012 WL 5504011, at *4 ("[T]he instant case is distinguishable from *Williams* in that the case at bar does not concern affirmative misrepresentation . . . ."); *Romero v. Flowers Bakeries, LLC*, No. 14-5189, 2016 WL 469370, at *7 (N.D. Cal. Feb. 8, 2016) ("Here, as in *Red* and unlike in *Williams*, no affirmative misrepresentation is alleged."); *Varela v. Walmart, Inc.*, No. 20-4448, 2021 WL 2172827, at *9 (C.D. Cal. May 25, 2021) (similar).

Here, the labeling—which describes the Morningstar Farms products as "veggie dogs," "vegan patties," and the like—makes abundantly clear that those products contain ingredients other than vegetables. *See* Compl. ¶ 14. And as courts have made clear, "[a] brand name that offers some indication of a product's contents is not . . . necessarily required to list out every ingredient." *Lima v. Post Consumer Brands, LLC*, No. 18-12100, 2019 WL 3802885, at *6 (D. Mass. Aug. 13, 2019) (dismissing claim that the name "Honey Bunches of Oats" violated 21 C.F.R. § 101.18(b)). Neither the term "veggie" nor any other aspect of the labeling suggests that vegetables are the sole ingredients in Kellogg's Morningstar Farms products, and Plaintiff has accordingly not alleged a violation of 21 C.F.R. § 101.18. *See, e.g.*, *Gubala*, 2015 WL 6460086, at *6 (holding that statements such as "Decadent Chocolate Milkshake" on a protein powder product "signal to consumers that the product they are purchasing is not made solely of the ultra-premium protein blend, but contains other ingredients as well"); *Coe v. Gen. Mills, Inc.*, No. 15-5112, 2016 WL 4208287, at *2 (N.D. Cal. Aug. 10, 2016) (dismissing claim that the name "Cheerios Protein" violated 21 C.F.R. § 101.18 "because it includes two ingredients, Cheerios and protein, but excludes sugar").

## B.   Plaintiff has not alleged a plausible violation of 21 C.F.R. § 102.5.

Plaintiff also alleges that the use of the term "veggie" violates 21 C.F.R. § 102.5, which "requires that a food product's name 'include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.'" Compl. ¶ 20 (quoting 21 C.F.R. § 102.5(b)). According to Plaintiff, this regulation bars Kellogg from using the term "veggie" because that term "gives the erroneous impression that vegetables are present in an amount greater than is actually the case." Compl. ¶ 20. This theory, like Plaintiff's core theory of deception, falsely conflates the term "veggie" (which, as used in this context, serves to differentiate the vegetarian products at issue from their meat-based counterparts) with "vegetables."

By its own terms, 21 C.F.R. § 102.5 governs a product's "common or usual name"—not other representations on the labeling. As the regulation makes clear, the "common or usual name of a food, which may be a coined term, shall accurately identify or describe, in as simple or direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); *see also*

*Coe*, 2016 WL 4208287, at *3 ("[T]he term 'common or usual name' is meant to refer to a generic descriptive term rather than a brand name.").  The FDA has also made clear that the "common or usual name of a food may be established by common usage." 21 C.F.R. § 102.5(d).  And while the product's "common or usual name" must "offer[] some indication of a product's content," it is "not . . . necessarily required to list out every ingredient."  *Lima*, 2019 WL 3802885, at *7 (holding that honey was not a characterizing ingredient of Honey Bunches of Oats cereal "because honey is not a characterizing ingredient of cereals generally" and that "[t]he regulations therefore do not require Post to disclose the proportion of honey in Honey Bunches of Oats"); *see also In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, No. 16-1442, 2018 WL 1616053, at *4 (C.D. Cal. Mar. 8, 2018) (holding that maple syrup and maple sugar were not characterizing ingredients under 21 C.F.R. § 102.5 because "[t]he 'basic nature' of the Products is *not* maple syrup or maple sugar, but is instead instant oatmeal").

Here too, Kellogg's use of terms like "veggie burgers" and "veggie dogs" is entirely consistent with 21 C.F.R. § 102.5.  As explained above, consumers commonly understand terms like "veggie burgers" and "veggie dogs" to refer to vegetarian meat substitutes generally, rather than products made with any specific amount or type of vegetables (or other plants).  *See supra* § I.  Because a "veggie burger" can consist of vegetables, beans, tofu, or any other combination of vegetarian ingredients, the presence or amount of specific plant-based ingredients does not affect the "basic nature of the food" and is therefore not "characterizing." 21 C.F.R. § 102.5(a).  Thus, Plaintiff has not alleged a violation of 21 C.F.R. § 102.5.

## IV.   **Plaintiff Has Not Stated a Plausible Breach-of-Warranty Claim.**

In addition to her claims under the UCL, FAL, and CLRA, Plaintiff also alleges claims for breach of express warranty and breach of the implied warranty of merchantability.  *See* Compl. ¶¶ 74–86.  These claims fare no better than her meritless consumer fraud claims.

### A.    **Plaintiff has not stated a plausible claim for breach of express warranty.**

Under California law, an express warranty is an "affirmation of fact or promise made by the seller to the buyer" that constitutes "part of the basis of the bargain."  Cal. Com. Code § 2313(1)(a).  To state a claim for breach of express warranty, Plaintiff "must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes [P]laintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).

---

Here, Plaintiff alleges that, "[t]hrough use of the 'VEGGIE' statement on the Veggie Products' labels, Kellogg made affirmations of fact or promises, or descriptions of goods, that, *inter alia*, the Veggie Products' predominant ingredient is vegetables, or at least vegetable-based." Compl. ¶ 75. But as explained earlier, the packaging makes no specific representation as to the presence or amount of vegetables or any other plant-based ingredient, and the term "veggie" signals the absence of meat—not the presence of any specific plant-based ingredient, let alone a certain amount or type of vegetables. Because the term "veggie" truthfully conveys that the product is vegetarian and "accurately describes the product," Plaintiff has not stated a claim for breach of express warranty. *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893-94 (C.D. Cal. 2013). And even if the term "veggie" might arguably *suggest* the presence of vegetables, that is not sufficient to establish that it amounts to an express warranty—let alone to allege the "exact terms" of that warranty. *Williams*, 185 Cal. App. 3d at 142; *see also Turner v. Sony Interactive Entm't LLC*, No. 21-2454, 2021 WL 5177733, at *1 (N.D. Cal. Nov. 8, 2021) ("In order to constitute an express warranty, a statement must be 'specific and unequivocal.'") (quoting *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997)).

Moreover, to the extent Plaintiffs claims that the packaging of Kellogg's Morningstar Farms product amounts to an express warranty, it would necessarily incorporate the specific language in the ingredient list as well. *See generally* Cal. Com. Code § 2317 (noting that express warranties must be treated as "consistent with each other and as cumulative" and that "[e]xact or technical specifications . . . displace general language of description"). Here, as explained above, the packaging of each product states precisely which plant-based ingredients appear in each Morningstar Farms product. *See supra* § II. Because that language clarifies precisely what ingredients each product does and does not contain, it precludes Plaintiff from relying on the more general term "veggie" to establish an express warranty. *See, e.g.*, *Viggiano*, 944 F. Supp. 2d at 894 (dismissing breach of express warranty where the "packaging . . . clearly identif[ies] the natural flavor found in each type of soda"); *Chin v. Gen. Mills, Inc.*, No. 12-2150, 2013 WL 2420455, at *7 (D. Minn. June 3, 2013) ("General Mills cannot be in breach of an express warranty by including an ingredient that it expressly informed consumers was included.").

1

2

**B.    Plaintiff has not stated a plausible claim for breach of implied warranty.**

Under California law, the implied warranty of merchantability "provides the consumer with only a *minimum level of protection* against product defects; it does not guarantee a perfect product." *Red v. Gen. Mills, Inc.*, No. 215-02232, 2015 WL 9484398, at *6 (C.D. Cal. Dec. 29, 2015) (emphasis added).  This warranty is breached only where the product lacks "the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)).  Here, Plaintiff does not allege that the Morningstar Farms products are inedible or unfit for consumption; instead, she simply alleges that Kellogg breached its purported "representations . . . that the predominant ingredient in the Veggie Products is vegetables, or at least vegetable-based." Compl. ¶ 81.  This Court should accordingly dismiss her breach of implied warranty claim.  *See, e.g.*, *Bohac v. Gen. Mills, Inc.*, No. 12-5280, 2014 WL 1266848, at *10 (N.D. Cal. Mar. 26, 2014) (Orrick, J.) (dismissing breach of implied warranty claim where the plaintiff did not allege that granola bars "were not edible or contaminated"); *Viggiano*, 944 F. Supp. 2d at 896 (dismissing beach of implied warranty claim where the plaintiff did "not allege any facts suggesting that the soda is not merchantable or fit for use as a diet soft drink," such as by alleging "that it was contaminated or contained foreign objects").

**V.    Plaintiff Has Not Plausibly Alleged Any Entitlement to Equitable Relief.**

Finally, even if this Court does not dismiss Plaintiff's lawsuit outright, it should nonetheless dismiss her claims for restitution, an injunction, and other equitable relief.[5]   As the Ninth Circuit has made clear, a plaintiff cannot seek equitable relief under California's consumer protection statutes without establishing that she lacks an adequate remedy at law.  *See Sonner*, 971 F.3d at 844.  Several of Plaintiff's claims permit her to recover money damages, and those damages would adequately compensate her for her alleged injury—*i.e.*, the supposed "price premium" she allegedly paid due to Kellogg's use of the term "veggie" on the labeling of its products.  *Sonner* accordingly bars her from seeking equitable relief.

In *Sonner*, the plaintiff initially asserted claims for both restitution and damages, but later

---

[5] At a minimum, this would require the dismissal of Plaintiff's claim for restitution under the CLRA and her claims under the UCL and FAL, which only authorize equitable relief and do not permit recovery of damages.  *See generally In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) ("The remedies available in a UCL or FAL action are limited to injunctive relief and restitution.").

abandoned her damages claims in favor of her claims for equitable restitution. 971 F.3d at 838. The district court then dismissed the plaintiff's remaining claims for restitution, holding that she had "failed to establish that she lacked an adequate legal remedy for the same past harm for which she sought equitable restitution." *Id.* The Ninth Circuit affirmed. In so holding, the Ninth Circuit agreed that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 844. And because the plaintiff had not alleged—let alone demonstrated—that she lacked an adequate legal remedy, the court held that she could not seek restitution. *Id.*

*Sonner* squarely precludes Plaintiff's claims for equitable relief. Like the plaintiff in *Sonner*, Plaintiff alleges that she and other class members "overpaid for the Veggie Products" due to Kellogg's use of the term "veggie." Compl. ¶ 26; *see also id.* ¶ 36 (alleging that Plaintiff and other class members "suffered economic injury because they paid more for Veggie Products"). And like the plaintiff in *Sonner*, Plaintiff asserts claims—including her claim under the CLRA and her breach-of-warranty claims—that permit recovery of money damages. Because Plaintiff's claims are premised on the money she allegedly "lost" as a result of Kellogg's conduct, and because she seeks damages as a remedy for that alleged injury, she has an adequate remedy at law.

Courts throughout California have applied this precise reasoning in dismissing claims for restitution under California's consumer protection statutes. *See, e.g.*, *Gibson v. Jaguar Land Rover N. Am., LLC*, No. 20-769, 2020 WL 5492990, at *3–4 (C.D. Cal. Sept. 9, 2020) (applying *Sonner* to dismiss claims for equitable relief with prejudice where the plaintiffs alleged that they "would have been able to avoid spending money" but for the defendant's alleged misrepresentations); *In re MacBook Keyboard Litig.*, No. 18-2813, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020) (applying *Sonner* to dismiss claims for equitable relief with prejudice where the plaintiffs alleged that they "overpaid for their allegedly defective laptops and incurred various expenses in their attempts to resolve the deficiencies"). And courts have applied the same reasoning in dismissing claims for injunctive relief, as *Sonner*'s "broad analysis of the distinction between law and equity" does not "create an exception for injunctions as opposed to other forms of equitable relief." *Adams v. Cole Haan, LLC*, No. 20-913, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020); *see also MacBook Keyboard*, 2020 WL 6047253, at *3 ("[U]nder *Sonner*, Plaintiffs are required to

allege that they lack an adequate remedy at law in order to seek injunctive relief.").

Plaintiff suggests that the "continued use of 'VEGGIE' on the Veggie Products' labeling also threatens to repeatedly infringe upon the substantive right California's consumer protection statutes give Plaintiff to be free from fraud in the marketplace" and that her "legal remedies are inadequate to prevent these future injuries." Compl. ¶¶ 30-31. But in assessing the adequacy of legal remedies, the relevant question is not whether the remedy is sufficient to avert future conduct, but instead whether it is adequate to make the plaintiff whole. *See Qualcomm Inc. v. Compal Elecs., Inc.*, 283 F. Supp. 3d 905, 917 (S.D. Cal. 2017) (holding that the plaintiff had "offered no persuasive rationale why the legal remedies available . . . will not be sufficient to make it whole" and that a plaintiff cannot obtain injunctive relief "merely by pointing out that the Defendants' breaches are ongoing").

*Huynh v. Quora, Inc.* is illustrative. There, after her personal information was compromised in a data breach, the plaintiff brought a claim under the UCL, as well as common-law claims for negligence, breach of contract, and breach of confidence. 508 F. Supp. 3d 633, 640 (N.D. Cal. 2020). The court held that the plaintiff could not seek injunctive relief, as she sought "a remedy at law through her negligence claim, which [was] based on the same alleged conduct as her equitable claim." *Id.* at 662. Although the plaintiff sought an injunction "mandating that Defendant both (1) provide updated information about exactly what was exposed and (2) institute industry-standard practices for protection of its users' data," the court concluded that *Sonner* precluded injunctive relief, as "the potential harm caused by both actions may be remedied by money damages." *Id.*

Likewise, in *Clark v. American Honda Motor Co.*, the plaintiffs brought a putative class action based on alleged defects in several models of Acura vehicles. 528 F. Supp. 3d 1108, 1114–15 (C.D. Cal. 2021). While the court permitted some of the plaintiffs' claims to go forward, it dismissed all of their equitable claims—including their claim under the UCL and their request for restitution and equitable relief under the CLRA because the plaintiffs had an adequate remedy at law. *See id.* at 1120–22. In so holding, the court rejected the plaintiffs' argument that *Sonner* did not apply because they sought "prospective injunctive relief" on behalf of "future purchasers for whom damages cannot be an adequate substitute for their plea for injunctive relief." *Id.* at 1121. The court held that this fact "does not exempt this case from *Sonner*, and none of its reasoning suggests that it is limited to claims for restitution for past harms and not

to purported future or ongoing harms." *Id.* And while the plaintiffs argued that they were entitled to seek injunctive relief on behalf of "future purchasers," the court found this argument "unavailing," as "nothing suggests that damages will not be adequate for future purchasers simply because they have not purchased their vehicles yet." *Id.* Once they do so, the court explained, "damages will be as adequate a remedy for them as it will be for currently-existing purchasers." *Id.*

That reasoning applies with equal force here. Plaintiff alleges that she and other class members lost money and paid an inflated price based on Kellogg's use of the term "veggie" to describe its products. *See* Compl. ¶¶ 26, 36. If Plaintiff were to prevail on that claim (which she will not), the appropriate remedy would be money damages sufficient to compensate her for the money she allegedly "lost," equal to the "premium" she allegedly paid. Given the availability of money damages to remedy that purported injury, there is no reason that Plaintiff requires injunctive relief to compensate her for injuries she (or any class member) allegedly suffered.

In short, Plaintiff claims that she lost money due to Kellogg's conduct, and she seeks money damages sufficient to make her whole for that monetary injury. In light of those allegations, Plaintiff cannot plausibly allege that she lacks an adequate remedy at law, and *Sonner* precludes her from seeking restitution, an injunction, or other equitable remedies.

## **CONCLUSION**

This Court should dismiss Plaintiff's complaint with prejudice and without leave to amend.

DATED:  November 16, 2021            JENNER & BLOCK LLP

By:      /s/   Dean N. Panos
                Dean N. Panos

Attorneys for Defendant
Kellogg Sales Company