2021 WL 6000078
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

Ankush PURI, Plaintiff,
v.
COSTCO WHOLESALE
CORPORATION, Defendant.

Case No. 5:21-cv-01202-EJD
|
Signed 12/20/2021

**Attorneys and Law Firms**

[Spencer Sheehan](), Sheehan & Associates, P.C., Great Neck, NY, [Jonathan Shub](), Shub Law Firm LLC, Haddonfield, NJ, for Plaintiff.

[Philip C. Swain](), Foley Hoag LLP, Boston, MA, [August T. Horvath](), Foley Hoag LLP, New York, NY, [Christopher A. Nedeau](), Law Offices of Gregory J. Ryken, San Francisco, CA, for Defendant.

**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT**

Re: Dkt. No. 23

[EDWARD J. DAVILA](), United States District Judge

**\*1** Plaintiff Ankush Puri brings this putative false advertising class action against Defendant Costco Wholesale Corporation ("Costco") related to Costco's sale of ice cream bars. Before the Court is Costco's motion to dismiss Puri's amended complaint under [Federal Rules of Civil Procedure 12(b)(6)]() and 9(b). Def. Costco Wholesale Corp.'s Notice of Mot. and Mem. in Supp. of Def.'s Mot. to Dismiss Pl.'s First Am. Compl. ("Mot."), Dkt. No. 23. The Court finds the motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). Having considered the parties' written submissions, the Court GRANTS the motion with leave to amend.

**I. BACKGROUND**

Defendant Costco is a Washington corporation with its principal place of business in Issaquah, Washington. First Am. Class Action Compl. ("FAC"), Dkt. No. 18 ¶ 87. Costco operates approximately 600 stores in the United States, including a significant number in California. *Id.* ¶¶ 88-89. Costco offers under its Kirkland Signature brand "Chocolate Almond Dipped Vanilla Ice Cream Bars" ("the Product"), which are sold in packages of 18 bars in Costco's retail stores. *Id.* ¶¶ 1-3.

The Product's packaging includes the aforementioned name of the Product as well as pictures of the Product, two pieces of chocolate, three vanilla beans, a vanilla flower, and two almonds. *Id.* ¶ 3. The packaging also includes an ingredient list, which provides that the Product's "Milk Chocolate Flavored Coating With Almonds" consists of "Coating (Sugar, Coconut Oil, Nonfat Dry Milk, Unsweetened Chocolate, Soybean Oil, Unsweetened Chocolate Processed With Alkali, Soy Lecithin), Roasted Almonds (Almonds, Cottonseed Oil)." *Id.* ¶ 39.

Plaintiff Puri is a resident of Santa Clara, California and has been a Costco member for many years. *Id.* ¶¶ 86, 94. Puri purchased the Product several times in the last two years. *Id.* ¶¶ 97-98. Based on the Product's packaging and name, he "expected the Product's chocolate coating would be made from chocolate from cacao beans." *Id.* ¶¶ 63-70. This is because, according to Puri, chocolate is defined by the Food and Drug Administration ("FDA") and under California law as "prepared from ground roasted cacao bean," and it must be "made chiefly from cacao beans with a small amount of optional ingredients." *Id.* ¶¶ 3, 7-8. Based on this definition, he says the pictures and terminology on the packaging are misleading because the "Milk Chocolate Flavored Coating With Almonds" actually contains mostly vegetable oils and only "de minimis" or "negligible" amounts of ingredients derived from cacao beans. *Id.* ¶¶ 39-78. Therefore, Puri alleges, "the Product is not chocolate, or even mostly chocolate, because it is mainly made from vegetable oils." *Id.* ¶ 71. He says that he would not have purchased the Product had he known of the amount of vegetable oils present in the Product. *Id.* ¶¶ 67-75.

In support of his contention that the Product is mostly vegetable oils and not ingredients derived from cacao beans, Puri relies on the Product's ingredient list, which identifies the ingredients in order of predominance by weight in accordance with [21 C.F.R. § 101.4(a)(1)](). *Id.* ¶¶ 39-48. He assigns weights to the ingredients based on their placement in the ingredient

list, ultimately concluding that the total amount of vegetable oils (the coconut oil and soybean oil) "are present in an amount greater than cacao bean ingredients" (presumably, the unsweetened chocolate and unsweetened chocolate processed with alkali). *Id.* ¶¶ 48. Furthermore, Puri says that the Product contains even less chocolate than his weighting analysis suggests, because the ingredient list improperly uses the term "unsweetened chocolate processed with alkali." *Id.* ¶¶ 49-56. He alleges that "unsweetened chocolate processed with alkali" is a misnomer, because only cocoa powder is processed with alkali, not chocolate. *Id.*

**\*2** In addition to his main theory that the Product's labeling is misleading because it contains more vegetable oils than cacao bean ingredients, Puri offers two other categories of reasons why the Product's packaging is deceptive: (1) the Product does not have the same taste or "mouthfeel" as "real" chocolate, and (2) "real" chocolate is a natural ingredient that has health and nutrition benefits and satiety value that synthetic vegetable oils do not. *Id.* ¶¶ 21-38.

On February 18, 2021, Puri filed the instant action alleging the following claims: (1) unlawful, unfair, and fraudulent conduct in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (3) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq. Id.* ¶¶ 113-151. On June 14, 2021, Costco filed the motion to dismiss now before the Court. Dkt. No. 23.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Likewise, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).

### B. Rule 9(b)

Consumer protection claims that sound in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1084 (N.D. Cal. 2018). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "[I]n a case where fraud is not an essential element of a claim, only allegations ... of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)" while "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.* at 1104–05.

**\*3** With respect to omissions-based fraud claims, "the pleading standard is lowered on account of the reduced ability in an omission suit 'to specify the time, place, and specific content, relative to a claim involving affirmative misrepresentations.' " *Barrett v. Apple Inc.*, No. 5:20-CV-04812-EJD, 2021 WL 827235, at \*7 (N.D. Cal. Mar. 4, 2021) (quoting *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008)); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).

### III. DISCUSSION

Costco now moves to dismiss all claims on the grounds that Puri fails to state any claim because the Product is not misleading, Puri's claims are preempted, Puri lacks standing to seek injunctive relief, and Puri has failed to comply with the requirements of the CLRA for seeking money damages. Mot. at 4–21.

#### A. Preemption

The Supremacy Clause grants Congress the power to preempt state law. U.S. Const. art. VI, cl. 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). The Supreme Court has identified two cornerstones of its preemption jurisprudence: first, "the purpose of Congress is the ultimate touchstone in every preemption case," and second, "[i]n all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citation and internal marks omitted). Where there is a "plausible alternative reading," courts "accept the reading that disfavors pre-emption." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005).

The Food Drug and Cosmetics Act ("FDCA") established a comprehensive federal scheme of food regulation to ensure food safety and proper labeling in an effort to avoid misleading consumers. 21 U.S.C. § 341 *et seq.* Congress amended the FDCA by enacting the Nutrition Labeling and Education Act of 1990 ("NLEA"). The FDCA, as amended by the NLEA, expressly preempts state laws to the extent they differ from federal law, providing that "no State ... may directly or indirectly establish ... any requirement for the labeling of food ... that is not identical to" the FDCA's requirements. 21 U.S.C. § 343-1(a)(3). A state regulation is "not identical to" a federal regulation if it imposes any obligation that differs from those specifically imposed by or contained in the applicable provision, including any implementing regulation. 21 C.F.R. § 100.1(c)(4)(ii). Under the NLEA, state consumer protection laws are preempted when they are used to impose requirements that contravene or are inconsistent with the FDCA's requirements. *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 601–03 (9th Cir. 2018); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1071–72 (N.D. Cal. 2017).

The parties disagree on whether Puri seeks to impose requirements that differ from the FDCA's and thus whether his claims are preempted. Costco argues that Puri's claims are preempted because the Product "fully complies with federal food regulations." Mot. at 17. Puri also argues that preemption is improper because there is a presumption against preemption in food regulation and the FAC does not impose additional requirements. Mem. of Points and Authorities in Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), Dkt. No. 24, at 4–7. While it is true that there is a presumption against preemption of laws within a state's police powers, "[c]onsumer protection laws, such as the UCL, FAL, and [CLRA], are nonetheless preempted if they seek to impose requirements that contravene the requirements set forth by federal law." *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1118 (C.D. Cal. 2010) (citing *Wyeth*, 555 U.S. 555).

**\*4** The primary thrust of Puri's allegations is that Costco's use of the word "chocolate" and a picture of chocolate on the Product's packaging is misleading because the Product's coating is "mostly vegetable oils" instead of ingredients derived from cacao beans. FAC ¶¶ 21, 39; *see* Opp'n at 2–3, 5–6. Similarly, Puri says that the phrase "Milk Chocolate Flavored Coating With Almonds" from the Product's ingredient list is misleading because it does not mention that the coating is mostly vegetable oils. FAC ¶¶ 57-59. According to Puri, the basis for this theory of liability is the Sherman Law and FDCA's definition of "chocolate" as "made chiefly from cacao beans with a small amount of optional ingredients" as described in 21 C.F.R. § 163.13(a). Opp'n at 5 (citing FAC ¶ 7). Puri also relies on FDA regulations that "limit the representation of a food as 'chocolate' where it contains a de minimis amount of cacao bean ingredients and is mostly vegetable oils," asserting that 21 C.F.R. § 163.155(c) requires Costco to label "[s]uch a food ... as 'milk chocolate and palm oil coating.' "[1] *Id.* (citing FAC ¶ 20).

[1] Puri's opposition brief and Paragraph 20 of the FAC refer to "palm oil." Opp'n at 5; FAC ¶ 20. The Product does not contain palm oil. FAC ¶ 39. Elsewhere, the FAC refers to "milk chocolate and vegetable oil coating." *See, e.g.*, *id.* ¶ 59. The Court uses this latter term.

The problem here is that neither of Puri's cited regulations support a viable theory of liability. The Court is unable to locate 21 C.F.R. § 163.13, and it appears that no such regulation exists. Title 21, Chapter I, Subchapter B, Part 163 of the Code of Federal Regulations concerns "Cacao Products," but none of its sections contain the general definition of "chocolate" that Puri cites. While Part 163's title, "Cacao Products," provides some support for Puri's claim that a chocolate product must be made from cacao beans, it does not support his claim that it must be "chiefly" so. Opp'n at 5 (citing FAC ¶ 7).

As to 21 C.F.R. § 163.155, that subsection reads in relevant part:

> (a) Description. Milk chocolate and vegetable fat coating is the food that conforms to the standard of identity, and is subject to the requirements for label declaration of ingredients for milk chocolate § 163.130 ..., except that one or more optional ingredients specified in paragraph (b) of this section are used....
>
> (b) Optional ingredients.
>
> > (1) Safe and suitable vegetable derived oils, fats, and stearins other than cacao fat [and] ...
> >
> > (2) Safe and suitable dairy-derived ingredients ...
>
> (c) Nomenclature. The name of the food is "milk chocolate and vegetable fat coating" or "skim milk chocolate and vegetable fat coating", as appropriate. Alternatively, the common or usual name of the vegetable derived fat ingredient may be used in the name of the food, e.g., "milk chocolate and _____ oil coating", the blank being filled in with the common or usual name of the specific vegetable fat used.

21 C.F.R. § 163.155. First, this regulation says nothing about the relative amounts of cacao bean ingredients versus vegetable oils. Section 163.155(a) refers to § 163.130, which in turn states that milk chocolate "contains not less than 10 percent by weight of chocolate liquor" as calculated according to a specific formula. 21 C.F.R. § 163.130(a)(2). However, even assuming that less than 10% chocolate liquor is considered a "de minimis amount," Puri does not adequately allege that the Product contains only a de minimis amount of cacao bean ingredients or even that the Product is "mostly vegetable oils." *See infra* Section III.B.

Second, § 163.155(c) does not contain any language mandating labeling of the Product as "milk chocolate and vegetable oil coating" under these circumstances. Rather, § 163.155 is a permissive standard of identity regulation. A violation of a standard of identity occurs if the food "purports to be or is represented as a food for which a definition and standard of identity has been prescribed" unless it conforms to that standard and is labeled as such. 21 U.S.C. § 343(g). When no such representation has been made, the standard of identity is not implicated. *See 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 599–600 (1951) (products "not meeting the defined specifications" but labeled accurately are not misleading).

**\*5** Accordingly, the Court finds that to the extent Puri's claims seek to require Costco to label the Product as "milk chocolate and vegetable oil coating" or "milk chocolate and vegetable oil almond dipped ice cream bars," those claims as currently pled are preempted because they seek to impose requirements different from or in addition to the FDCA's requirements. The Court does not reach the question of whether Puri's claims are preempted because Costco in fact complied with FDA regulations and policy guidance—the Court makes no such findings here. Mot. at 7–9 (citing 21 C.F.R. §§ 163.135 and 163.155, and FDA Compliance Policy Guide § 515.800). Nor does the Court reach Costco's argument concerning the use of "chocolate" as a flavor designator.[2] *Id.* at 4–14.

[2] Although the FAC contains specific statements regarding flavor, Puri expressly disclaims any theory of liability based on flavor, asserting that his claims relate only to "the use of chocolate as a nutritive ingredient, not a flavor." *Compare* FAC ¶¶ 28-31, 67-68 (discussing the flavor and taste of chocolate and the Product) *with* Opp'n at 6 ("The FAC is unambiguous that the representations are misleading with respect to the use of chocolate as a nutritive ingredient, not a flavor."). The Court therefore reads the FAC as not asserting any consumer deception claims based on the Product's flavor or taste. At any rate, the Court observes that other courts in this District have ruled that whether a flavor designator is proper under 21 C.F.R. § 101.22(i) (and thus whether a plaintiff's claims are preempted) cannot be decided at the pleading stage as a matter of law. *See, e.g.*, *Tucker v. Post Consumer Brands, LLC*, No. 19-cv-03993-YGR, 2020

WL 1929368, at *3–4 (N.D. Cal. Apr. 21, 2020) (citing cases).

### B. Reasonable Consumer Standard

Even if Puri's claims are not preempted, he fails to state a deceptive labeling claim.

California's UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Puri brings consumer deception claims under all three prongs. FAC ¶¶ 113-132. The FAL similarly prohibits "untrue or misleading" advertising "which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading," Cal. Bus. & Prof. Code § 17500, and the CLRA prohibits " 'unfair methods of competition and unfair or deceptive acts or practices' in transactions for the sale or lease of goods to consumers." Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 833 (2006) (quoting Cal. Civ. Code § 1770(a)). Consumer deception claims under the UCL, FAL, and CLRA must satisfy the "reasonable consumer" standard to survive a motion to dismiss pursuant to Rule 12(b)(6). Moore v. Trader Joe's, 4 F.4th 874, 881 (9th Cir. 2021); Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)).

The reasonable consumer standard requires that "members of the public are likely to be deceived" by the pertinent advertising. See Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks omitted). This standard is "not a negligible burden," and it "requires more than a mere possibility" that the statement at issue "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Moore, 4 F.4th at 881 (quoting Ebner, 838 F.3d at 965 (internal quotation marks omitted)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.' " Ebner, 838 F.3d at 965 (quoting Lavie v. Procter & Gamble Co., 165 Cal. App. 4th 496, 508 (2003)). California district and state courts have recognized that whether a reasonable consumer would be misled is generally a question of fact not amenable to determination on a motion to dismiss but that the factual allegations may fail as a matter of law. See Williams, 552 F.3d at 938–39; Robie v. Trader Joe's Co., No. 20-cv-07355-JSW, 2021 WL 2548960, at *5 (N.D. Cal. June 14, 2021); Shaeffer v. Califia Farms, LLC, 44 Cal. App. 5th 1125, 1140 (2020).

**\*6** Here, Puri has not alleged facts from which it may be plausibly inferred that the Product's packaging would mislead a reasonable consumer. The FAC suffers from numerous defects.

First, there are no facts to support the FAC's fundamental theory that to qualify as "chocolate," a food must be chiefly made from ingredients derived from cacao beans. As described above, the purported legal basis for Puri's alleged FDA definition of chocolate, "21 C.F.R. § 163.13(a)," does not exist. See supra Section III.A. The Merriam-Webster dictionary definition that Puri quotes does not require that a food be made *chiefly* from cacao bean ingredients to be called "chocolate." FAC ¶¶ 4-8.

Second, the FAC is chock full of internal contradictions. For example, Puri acknowledges that the coating ingredients include "unsweetened chocolate" and "unsweetened chocolate processed with alkali," which he repeatedly describes as "cacao bean ingredients." *See id*. ¶¶ 42-44, 48-50. If those ingredients come from cacao beans as he states, then his entire theory that the Product is misleading because it does not contain ingredients derived from cacao beans is defeated. Even accepting Puri's allegations that the Product's packaging incorrectly uses the term "unsweetened chocolate processed with alkali" instead of "unsweetened cocoa powder processed with alkali," "cocoa powder" nonetheless still comes from cacao beans. See 21 C.F.R. § 163.113 (standard of identity for "cocoa," referencing "breakfast cocoa" as described in 21 C.F.R. § 163.112); 21 C.F.R. § 163.112 ("Breakfast cocoa is the food prepared by pulverizing the material remaining after part of the cacao fat has been removed from ground cacao nibs."); 21 C.F.R. § 163.110 ("Cacao nibs is the food prepared by removing the shell from cured, cleaned, dried, and cracked cacao beans."). Additionally, Puri's allegation that "[l]isting the ingredient as 'Milk Chocolate Flavored Coating With Almonds' does not tell consumers that the coating is mostly lower quality chocolate substitutes – vegetable oils" contradicts his earlier allegation that the Product's ingredient list identifies the ingredients in order of predominance by weight. *Compare* FAC ¶¶ 39-43 *with id*. ¶ 58. It is clear from the face of the ingredients list that there is more coconut oil than unsweetened chocolate or unsweetened chocolate/cocoa processed with alkali.

Third, in support of his claims, Puri attempts to use the Product's ingredient list to engage in a purported analysis in which he assigns weight amounts in decreasing order

according to each ingredient's predominance. *Id.* ¶¶ 39-48. Based on this analysis, Puri "confirms" that vegetable oils are present in greater amounts than cacao bean ingredients. *Id.* ¶ 48. These allegations are completely speculative, and the weight amounts Puri assigns each ingredient appear to be entirely arbitrary without firm basis in fact. It could very well be that one could assign different weight amounts to each ingredient that would result in the amount of cacao bean ingredients equaling (or possibly even exceeding) the amount of vegetable oils. "[A] plaintiff's unreasonable assumptions about a product's label will not suffice" to satisfy the reasonable consumer standard. *Moore*, 4 F.4th at 882. Even if the Court were to accept this unsubstantiated analysis, Puri himself concludes that there are "15 grams" of total vegetable oils compared to "12 grams" of total cacao bean ingredients —hardly support for a claim that the Product is "mostly vegetable oils" with a "de minimis" amount of chocolate. FAC ¶ 48.

**\*7** Fourth, a reasonable consumer would know that chocolate must be mixed with some significant amount of fat or oil to create a coating that would solidify around an ice cream bar.[3] Even if a consumer were concerned that the Product's coating is not purely chocolate made from primarily cacao bean ingredients, any "potential ambiguity could be resolved by the back panel of the products," as any "reasonable shopper" would know. *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015). *Workman* is a particularly instructive case: there, the plaintiff alleged that puree pouches and fruit bars whose labels included large images of pumpkin, pomegranate, quinoa, and yogurt were misleading because the pictured foods were not the "most prominent" ingredients. *Id.* at 1033–34. The *Workman* plaintiff argued that the labeling was misleading because "it did not display pictures of applesauce (the primary ingredient in many of the products)." *Id.* at 1037. Puri makes strikingly similar claims here: in addition to alleging that the chocolate image on the Product's packaging is deceptive because it is not the primary ingredient in the Product's coating, Puri also says that he "did not observe pictures of vegetable oils on the front label," implying that failing to do so was misleading. FAC ¶ 65. The *Workman* court dismissed the action on the grounds that "a reasonable consumer would simply not view pictures on the packaging of a puree pouch or box of fruit bars and assume that the size of the items pictured directly correlated with their predominance in the blend." 141 F. Supp. 3d at 1035. The same reasoning applies here. The representations of chocolate and the absence of representations of vegetable oils would not deceive a reasonable consumer, who can always consult the ingredients list for "more detailed information about the product that confirms other representations on the packaging." *Williams*, 552 F.3d at 939. This is especially true when one of the allegedly misleading representations is itself listed in the ingredients, where any concerns about the presence or absence of vegetable oils can be addressed by reading the next two lines. *See* FAC ¶ 39.

[3]  The FAC includes various comments from individuals in the chocolate confectionery industry about the use of vegetable oils in solid chocolate candy, not ice cream coating. *See* FAC ¶¶ 10-15, 30 (discussing a "bar" of chocolate in Paragraph 14).

Puri relies on *Williams* in arguing that the ingredients list cannot cure deception caused by the front label. Opp'n at 11 (citing *Williams*, 552 F.3d at 938). However, Puri's reliance is misplaced, as "*Williams* stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner*, 838 F.3d at 966 (emphasis original). As discussed, there is no deception to be cured—Costco makes no representations, implied or otherwise, that would deceive a reasonable consumer into believing that no vegetable oils are present in the Product's coating, or that the Product's coating is made predominantly from cacao bean ingredients.

Fifth, Puri points to consumer survey results showing that "[m]ore than two-thirds" of "over four hundred" consumers who viewed the front label of the Product's package "expected the Product would contain chocolate and not chocolate substitutes." FAC ¶¶ 16-17. These barebones allegations do not include important details such as exactly what questions the survey asked or what its methodology entailed. Nor does this survey's result support Puri's primary assertion, which is that to be properly considered "chocolate," a product must be made chiefly from cacao beans. These allegations are not enough to nudge Puri's claims of consumer deception from possible to plausible. *Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2020 WL 7043879, at \*3–4 (N.D. Cal. 2020). Even if Puri had provided sufficient factual detail concerning the survey, otherwise facially implausible consumer deception claims cannot be redeemed by survey allegations alone. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019); *Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 WL 3487117, at \*7–8 (N.D. Cal. Aug. 9, 2021); *Tucker*, 2020 WL 1929368 at \*5.

Finally, in addition to his main theory that the Product's labeling is misleading because it contains more vegetable oils than cacao ingredients, Puri offers two other general reasons why the Product's packaging is deceptive: (1) the Product does not have the same taste or "mouthfeel" as "real" chocolate, and (2) "real" chocolate is a natural ingredient that has health and nutrition benefits and satiety value that synthetic vegetable oils do not. FAC ¶¶ 21-38. With respect to the former reason, as discussed above, Puri has disclaimed misrepresentations based on flavor, *see supra* n.4, and he has not alleged any violation of statutes or regulations governing "mouthfeel," if they even exist. *Id.* ¶¶ 29-31. As to the latter reason, it is simply not plausible that a reasonable consumer would purchase and eat chocolate covered ice cream bars for health or nutritive benefits or satiety value. Even if it were, the Product's packaging makes no claims about health, nutrition, or satiety.

**\*8** Because a reasonable consumer would not be deceived by the Product's labeling for all the above reasons, the Court dismisses Puri's UCL, FAL, and CLRA claims.

### C. Rule 9(b)

Costco argues cursorily in the introduction to its motion to dismiss that Puri's claims sound in fraud and that he has not pled those claims with the particularity required under Rule 9(b). Mot. at 2–3. This argument is not well developed. However, Puri does not address Rule 9(b) at all in his opposition, thus the Court understands him to have conceded the issue. *See* Opp'n. Accordingly, the Court also dismisses all claims for failure to comply with Rule 9(b).

Because the Court has determined that Puri's claims are not viable for three different reasons, it does not reach the question of whether Puri has adequately alleged standing for injunctive relief or whether he has timely noticed his claim for damages under the CLRA.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Costco's motion to dismiss. Because the Court cannot say that amendment would be futile, the Court grants Puri limited leave to amend his complaint to allege a statute or regulation that requires "chocolate" to be made chiefly from cacao beans. Puri shall file his second amended complaint by **January 3, 2022**.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 6000078

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.  7