UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA KENNARD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KELLOGG SALES COMPANY,<br><br>　　　　Defendant. | Case No. 21-cv-07211-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**<br><br>Re: Dkt. No. 39 |

Defendant Kellogg Sales Company's motion to dismiss the First Amended Complaint is GRANTED. Plaintiff Angela Kennard's allegations are implausible as a matter of law. The dismissal is WITH PREJUDICE.

**BACKGROUND**

Plaintiff alleges in her class action complaint that Kellogg misleadingly and illegally labels specific MorningStar Farms "VEGGIE" products, including varieties of "VEGGIE BURGERS," "VEGGIE DOGS," "VEGGIE CHIK'N," "VEGGIE MEAL STARTERS," "VEGGITIZERS," and "VEGGIE BREAKFAST," collectively "Veggie Products." First Amended Complaint ("FAC"), ¶ 1.[1] She asserts that Kellogg violates: (i) California's Consumer Legal Remedies Act ("CLRA," Cal. Civ. Code § 1750 *et seq*,); (ii) California's False Advertising Law ("FAL," Cal. Bus. & Prof. Code §17500 *et seq*.); (iii) California Unfair Competition Law ("UCL," Cal. Bus. &

---

[1] The specific MorningStar Farms products challenges are MorningStar Farms "Veggie Burgers: • Grillers Prime Burgers • Grillers Originals • Meat Lovers • Cheezeburger"; MorningStar Farms "Veggie Dogs: • Corn Dogs • Veggie Dogs"; MorningStar Farms "Veggie Chik'n: • Chik'n Nuggets • BBQ Chik'n Nuggets • Zesty Ranch Chik'n Nuggets • Sweet Mustard Chik'n Nugget • Original Chik Patties • Buffalo Chik Patties"; MorningStar Farms "Veggie Meal Starters: • Italian Sausage Style Crumbles • Meatballs"; MorningStar Farms "Veggie Breakfast: • Bacon Strips • Original Sausage Patties • Sausage, Egg, & Cheese • Sausage Links • Hot & Spicy Sausage Patties • Maple Flavored Sausage Patties"; MorningStar Farms "Veggitizers: • Buffalo Wings • Parmesan Garlic Wings • Popcorn Chik'n • Chorizo Nacho Bites • Spicy Popcorn Chik'n." FAC ¶ 11.

Prof. Code §17200 *et seq*.); and (iv) breach of Express and Implied Warranties. FAC ¶¶ 64-109.

In essence, plaintiff contends that "reasonable consumers" – as demonstrated by consumer survey evidence and the customary usage of the term "veggie" by Kellogg and other retailers and restaurants – understand the term "veggie" as used by Kellogg to mean that the products are "made primarily of vegetables." *Id*. ¶ 2. She alleges that Kellogg's use of the term VEGGIE in the Veggie Products' packaging "is false or at least highly misleading because ingredients in the Veggie Products are not primarily vegetables  Instead they are predominantly cheaper, non-vegetable ingredients like wheat gluten, oil, and corn syrup solids." *Id*. ¶ 3. She states that consumers "understand ingredient 'call-outs' in product names for meat-alternatives" – like the use of VEGGIE by defendant means – "to signal" that the Veggie Products are primarily made from vegetables "rather than from other non-vegetable plant-based ingredients." *Id*. ¶¶ 16-18.

Kellogg moved to dismiss the initial complaint, arguing that no reasonable consumer would be misled by the use of the term VEGGIE in the Veggie Products because reasonable consumers understand that term – whether considered by itself or in connection with other information on the Veggie Products' packaging – as referring to vegetarian/meat substitute foods and not a reference or "call out" to being primarily made of "vegetables" as opposed to grains and oils. Dkt. No. 23. After hearing oral argument, I agreed with Kellogg and dismissed the complaint with leave to amend. Dkt. No. 34.

I noted, first, that "[t]his is one of the rare cases where it is implausible at the pleading stage that a reasonable consumer would be deceived by the defendant's packaging or marketing." *Id*. I also explained that the dictionary definition relied on by plaintiff itself noted that the "term VEGGIE can be used to describe a vegetarian product or the presence of vegetables," but plaintiff's claims were not plausible based on the word "VEGGIE" alone, given the nature of Kellogg's products and the context of the products' labels. *Id*. ("There is no allegation that defendant's packaging or marketing otherwise conveyed the presence of vegetables in the product"). I gave plaintiff leave to amend so that she could add to her complaint "facts to support her allegation and shows why a significant portion of the general consuming public acting reasonably could be misled into thinking the challenged products were made from vegetables as

2

opposed to grains, legumes, and oil." *Id*.

In her First Amended Complaint (FAC), plaintiff asserts the same causes of action based on the same central theory: Kellogg's use of VEGGIE to describe its meat substitute products is inherently misleading as it implies to the reasonable consumer that vegetables are the primary ingredient, as opposed to oil, legumes, and grains. The one significant addition to the FAC is reference to consumer surveys commissioned for this case. The surveys, according to plaintiff, demonstrate that California consumers are interested in purchasing "meat-alternative" products and those consumers are "misled" by the Veggie Products' VEGGIE labelling into believing the products they are purchasing are "primarily made of vegetables rather than other non-vegetable plant-based ingredients." FAC ¶¶ 18-26, Ex A thereto.

In that survey, Californians between the ages of 18 to 79 who indicated that they "had purchased (or seriously considered purchasing) a meat-substitute product in the past 12 months" were given a questionnaire regarding either a "Veggie Burger" or a "Veggitizer," and were informed that they were going to be asked their thoughts "about the ingredients you expect would be used in the following packaged food item offered by MorningStar Farms." *Id*. ¶¶ 22-23. The initial screen identified "two categories of meat-substitute ingredients"; "Vegetable-based," which "would include ingredients made of actual vegetables such as carrots, cauliflower, or potatoes," and "Other Plant-based," which "could include ingredients made of other non-vegetables such as grains or oils." *Id*. ¶ 23.

On the second page, respondents were asked, after being directed to look at packaging, "which of the following best describes the types of ingredients you expect this product to be made of": "Entirely vegetable-based ingredients," "Primarily vegetable-based ingredients," "Primarily other plant-based ingredients," "Entirely other plant-based ingredients," and "I do not have an opinion." *Id*. ¶ 24. According to plaintiff, "of the over 100 respondents to each questionnaire, over 80 percent were misled to believe the products are primarily or entirely made of vegetables." *Id*. ¶ 25.

Plaintiff also has added allegations regarding Kellogg's' trademark registrations to support her contention that "Veggie" means vegetables as opposed to mere meat-alternatives. FAC ¶¶ 27-

3

31 (noting registration of "grillers" as "textured vegetable protein" patties and "AMERICAN'S ORIGINAL VEGGIE BURGER" or "VEGGIE DOGS" to cover "veggie food products namely, vegetable based meat [and fish] substitutes; textured vegetable protein; frozen packaged entrees consisting of vegetable based patties" or links); *id*. ¶ 32 (trademarking "VEGGITIZERS" as "Vegetable-based meat substitutes; meat substitutes; vegetable-based snack foods; preserved, processed dried, frozen and cooked vegetables; snack foods consisting primarily of meat substitutes."). She notes that in a "previous version" of the MorningStar Farms' website, Kellogg described MorningStar Farms products as being made with "sun-ripened vegetable goodness" and offering the "widest selection of full flavored veggie foods available." FAC ¶ 33. And she cites one advertisement that "veggies look good with grill marks" showing grilled MorningStar Farms "Grillers." *Id*. ¶ 35. Finally, she points to a product description written by one retailer (BJ's Wholesale Club), which describes MorningStar Farms' "Veggie Chick'n Nuggets" as "Vegetable Nuggets," and one restaurant chain, which describes MorningStar Farms' veggie burgers as a "vegetable patty." *Id*. ¶¶ 36-37.

## LEGAL STANDARD

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

4

inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. DECEPTIVE OR MISLEADING

To be misleading to a "reasonable consumer," plaintiff must plausibly "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks and citation omitted). "This requires more than a mere possibility that [the product's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–29 (9th Cir. 2019) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496 (2003). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508).

Kellogg's main argument on this second round of briefing, as it was on the first, is that VEGGIE, as used in the Veggie Products' names and labels, could not mislead any reasonable consumer as a matter of law. It asserts that VEGGIE refers to vegetarian foods and, in the context here, meat substitutes as opposed to food containing any particular quantity of vegetables. It acknowledges that the impact of allegedly misleading product names or advertisements on reasonable consumers is not typically resolved at the motion to dismiss stage, but that the use of VEGGIE – as demonstrated by the FAC's own identification of product types and packaging – establishes as a matter of law that Kellogg is identifying the challenged products as vegetarian meat alternatives and not as containing specific types of or amounts of particular vegetables. At

1    most, Kellogg argues, the use of the term VEGGIE might be ambiguous but nothing on the

2    products' packaging (patties, links and other products devoid of any obvious vegetable content)

3    could convey the presence of any particular amount of vegetables to a reasonable consumer.

4        I agree that the FAC's allegations – consistent with guidance from recent Ninth Circuit

5    decisions – are implausible and do not support a reasonable inference that some significant portion

6    of consumers would be misled into thinking the VEGGIE products are made primarily of

7    vegetables as opposed to being vegetarian meat substitutes made from grains, oils, legumes, or

8    other ingredients.  *See, e.g., Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir.

9    2019) (considering dictionary definitions of diet and concluding, "[w]hen considering the term in

10   its proper context, no reasonable consumer would assume that Diet Dr Pepper's use of the term

11   "diet" promises weight loss or management."); *Sensible Foods, LLC v. World Gourmet, Inc.*, No.

12   11-2819 SC, 2012 WL 566304, at *6 (N.D. Cal. Feb. 21, 2012) (rejecting misleading challenge to

13   use of the word "veggie" in the name of "Veggie Straws, Veggie Chips, and Veggie Crisps"

14   products when those products are "primarily potato product[s]"); *Gitson v. Trader Joe's Co.*, No.

15   13-CV-01333-VC, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015) ("The plaintiffs cannot state

16   a claim because they have not articulated a plausible explanation for how 'soymilk' is misleading.

17   [] The reasonable consumer (indeed, even the least sophisticated consumer) does not think

18   soymilk comes from a cow. To the contrary, people drink soymilk in lieu of cow's milk. [] . . . a

19   reasonable consumer (indeed, even an unsophisticated consumer) would not assume that two

20   distinct products have the same nutritional content; if the consumer cared about the nutritional

21   content, she would consult the label."); *Weiss v. Trader Joe's*, 838 F. App'x 302, 303 (9th Cir.

22   2021) ("A reasonable consumer would not interpret any of the challenged representations to

23   suggest either internal pH balancing or superior hydration. When considered within the context of

24   the water bottle packaging as a whole, the phrase "ionized to achieve the perfect balance" clearly

25   refers to the water itself being balanced. No reasonable consumer would interpret that statement to

26   mean that the water itself will balance the consumer's own pH levels.").

27       Even if the use of the term VEGGIE is ambiguous and could possibly be construed as

28   referring to vegetable content (as opposed to vegetarian content), looking to the packaging of the

Veggie Products confirms that no significant amount of reasonable consumer would be misled. The packaging, which has been incorporated into the FAC, provides no indication that any particular vegetable or class of vegetables is present in the Products. Instead, the majority of the photographs on the packaging show the Products clearly mimicking meat as vegetarian meat substitutes. Consumers can also readily identify the actual ingredients in the Veggie Products from the ingredient list that complies with federal law. *See, e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-883 (9th Cir. 2021) ("To analyze whether this ambiguity" of representation that product was "100% Manuka honey," district court appropriately "considered other information readily available to the consumer that could easily resolve the alleged ambiguity" and "concluded that, as a matter of law, other available information about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief that Trader Joe's Manuka Honey was derived from 100% Manuka flower nectar" including "contextual inferences regarding the product itself and its packaging" including "(1) the impossibility of making a honey that is 100% derived from one floral source, (2) the low price of Trader Joe's Manuka Honey, and (3) the presence of the "10+" on the label, all of which is readily available to anyone browsing the aisles of Trader Joe's."); *see also Puri v. Costco Wholesale Corp.*, No. 5:21-CV-01202-EJD, 2021 WL 6000078, at *6–8 (N.D. Cal. Dec. 20, 2021) (dismissing reasonable consumer claim based on high amounts of vegetable oils and low amounts of cacao bean ingredients in chocolate coating where: (1) no facts to support the FAC's fundamental theory that to qualify as "chocolate," a food must be chiefly made from ingredients derived from cacao beans; (ii) where it "is clear from the face of the ingredients list that there is more coconut oil than unsweetened chocolate or unsweetened chocolate/cocoa processed with alkali"; (iii) assigning weight in decreasing order according to each ingredient's predominance based on ingredient list unsupported; (iv) "a reasonable consumer would know that chocolate must be mixed with some significant amount of fat or oil to create a coating that would solidify around an ice cream bar" and any potential ambiguity could be resolved by the back panel of the products; (v) plaintiff's consumer survey insufficient because did not "include important details such as exactly what questions the survey asked or what its methodology entailed" and an "otherwise facially implausible consumer deception claims cannot

be redeemed by survey allegations alone"; (vi) "it is simply not plausible that a reasonable consumer would purchase and eat chocolate covered ice cream bars for health or nutritive benefits or satiety value."); *see also Weiss*, 838 F. App'x at 303 (citing with approval *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (explaining that product packaging should be examined in its full context because it would be unreasonable to cherry-pick discrete statements to prove deception.")).

As in *Moore*, looking to "contextual inferences regarding the product itself and its packaging," there is no support for plaintiff's preferred understanding of the term VEGGIE as referring to products primarily made from vegetables as opposed to grains, oils, corn syrup solids, or other meat-alternative ingredients. This case is wholly unlike *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), where the packaging showed whole fruits that were not included in the product in any amount. *See also Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) ("But here, unlike in *Williams*, there is no deceptive act to be dispelled. As explained above, [lip balm's] weight label complies with both federal and California law. Further, the weight label does not contradict other representations or inferences on [product's] packaging. Apart from the accurate weight label, there are no other words, pictures, or diagrams adorning the packaging, as there were in *Williams*, from which any inference could be drawn or on which any reasonable belief could be based about how much of the total lip product can be accessed by using the screw mechanism."); *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1187 (N.D. Cal. 2021) ("The court concludes that there is no affirmative misrepresentation or deception on the product's label. Without a deceptive act or statement, *Williams* does not apply.").

In her prior complaint, plaintiff relied primarily on dictionary definitions to support her argument that reasonable consumers would interpret VEGGIE as a reference to the product being made primarily from vegetables.[2] As noted in my order dismissing the original complaint, those dictionary definitions demonstrated – at most – that use of VEGGIE conveyed that the products were vegetarian, or were meat substitutes, or were products containing vegetables, but that

---

[2] *See* Compl. [Dkt. No. 1] at 2 n.1.

8

United States District Court
Northern District of California

possible ambiguity was not in and of itself misleading. Dkt. No. 34. Now, in the FAC, plaintiff relies primarily on her consumer survey to support that a significant number of reasonable consumers would be misled by the use of the term VEGGIE into thinking the products were made primarily or entirely of vegetables. Kellogg contends that the survey cannot defeat dismissal because the survey did not ask respondents to define VEGGIE or "veggie burger." Instead, the survey constructed a false-dichotomy between two types of meat substitutes; those made primarily from vegetables (like carrots and potatoes) and those made from "non-vegetables" such as grains or oils. Kellogg also maintains that the misleading definition of "other plant-based" ingredients negates any residual value of the survey. Mot. at 10-12.

I agree that the survey cannot save plaintiff's claim given the facial deficiencies, as well as the lack of any support for plaintiff's preferred definition of VEGGIE on the Products' packaging. *See, e.g., Becerra v. Dr Pepper/Seven Up, Inc*., 945 F.3d 1225, 1231 (9th Cir. 2019 ("The survey cannot, on its own, salvage Becerra's claim. Although we must accept the allegations surrounding the survey as true at this stage of the litigation, a reasonable consumer would still understand 'diet' in this context to be a relative claim about the calorie or sugar content of the product. The survey does not address this understanding or the equally reasonable understanding that consuming low-calorie products will impact one's weight only to the extent that weight loss relies on consuming fewer calories overall. At bottom, the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word "diet" to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet.'"); *Puri v. Costco Wholesale Corp*., No. 5:21-CV-01202-EJD, 2021 WL 6000078, at *6–8 (N.D. Cal. Dec. 20, 2021) ("otherwise facially implausible consumer deception claims cannot be redeemed by survey allegations alone," where reasonable consumer would not be misled by "Milk Chocolate Flavored Coating" that is made mostly from oils into believing coating made with chocolate from cacao beans); *Tucker v. Post Consumer Brands, LLC*, No. 19-CV-03993-YGR, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020) (noting that a consumer survey on its own cannot satisfy the reasonable consumer test); *Yu v. Dr. Pepper Snapple Group, Inc*., No. 18-CV-06664-BLF, 2020 WL 5910071, at *4-5 (N.D. Cal. October 6, 2020) (same).

As in *Becerra*, plaintiff's survey asked the wrong question – what plant-based ingredients the consumers believed were primarily in a product. The right question is whether use of the term VEGGIE in light of the types of products challenged and those Products' packaging conveyed that the Veggie Products were meat-alternative or whether those sources conveyed the challenged Products were made with vegetables as opposed to other ingredients. *Becerra*, 945 F.3d at 1231 (dismissing where the "survey does not address this understanding or the equally reasonable understanding").

Finally, assuming that the use of the term VEGGIE is ambiguous, any ambiguity is dispelled by the packaging, which describes the products as free of meat and contains photos of products that do not obviously contain vegetables or represent that they contain any plant-based ingredient in particular. And any ambiguity is also easily dispelled by reviewing the ingredient list on the packaging. *See, e.g., Moore*, 4 F.4th at 882 (affirming dismissal of false advertising lawsuit and holding that claim was not plausible "as a matter of law" where "other available information . . . would quickly dissuade a reasonable consumer" from her purported interpretation of the labeling); *Culver v. Unilever United States, Inc.*, 2021 WL 2943937, at *1 (C.D. Cal. June 14, 2021) (dismissing a lawsuit alleging that the labeling of Maille Dijon mustard, including the phrase "Paris" as well as words in French, falsely implied that the mustard was made in France (as opposed to Canada).

Because there is no deceptive act to dispel, the Ninth Circuit case most heavily relied on by plaintiff is inapposite. In *Williams v. Gerber*, the front of the package conveyed that the product contained fruit and was, therefore, deceptive. *Williams*, 552 F.3d at 939. In that circumstance, the presence of fine print revealing the truth (*i.e.*, in the product ingredient list on the back of the package) was insufficient to dispel that deception. This case is closer to *Ebner v. Fresh, Inc.*, 838 F.3d at 966, where there is "no deceptive act to be dispelled" and disclosures elsewhere on the packaging (*i.e.*, the ingredient list) defeat the deception claim where that list eliminates the ambiguity. *Id*. at 966; *see also, e.g., Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1187 (N.D. Cal. 2021) ("[T]here is no affirmative misrepresentation or deception on the product's label. Without a

10

1  deceptive act or statement, *Williams* does not apply.").[3]

## II. ILLEGALITY

Plaintiff separately alleges that Kellogg's use of VEGGIE violates various laws and regulations, constituting illegal behavior under the UCL. Specifically, plaintiff contends that Kellogg's conduct violates California Health and Safety Code §§109875, *et. seq.* (the "Sherman Law"), which has expressly adopted federal food labeling requirements, by: (i) making false and misleading representations that the products are primarily made from vegetables in violation of 21 U.S.C. § 343(a), which deems misbranded any food whose "label is false or misleading in any particular"; (2) violating 21 C.F.R. § 101.18(b), by describing the Products as VEGGIE despite that they are primarily composed of non-vegetable ingredients, like wheat, gluten, and oil; and (iii) violating 21 C.F.R. § 102.5(b) by using product names that include the term VEGGIE while failing to disclose the percentage of vegetables in the Products, which has a material bearing on the price and consumer acceptance of the Veggie Products. FAC ¶ 43.

### A. Misleading under 21 U.S.C. § 343(a)

As shown above, Kellogg's use of the term VEGGIE is not false and misleading in violation of federal food labelling law[4] or California's Sherman Law.[5] Use of VEGGIE is, at most, ambiguous, and the context of its use considering the packaging (the photographs and contents on the front of the package as well as the information on the back) does not convey that the Products use any particular amount of vegetables that could mislead consumers in violation of federal or California law.

### B. Misbranded under 21 C.F.R. § 101.18(b)

Plaintiff also alleges that the VEGGIE products are misbranded under 21 C.F.R. § 101.18.

---

[3] In addition to the consumer survey, plaintiff attempts to support the plausibility of her preferred meaning of VEGGIE by referencing the trademark registrations for MorningStar products that refer to the "grillers" and "veggitizer" products as "vegetable based" patties or meat substitutes, and to the sites of two retailers who characterize two Products as "vegetable nuggets" or "vegetable patties." Oppo. at 3-4. These discrete references – disclosures to the Trademark Office and those made by retailers not under the control of Kellogg – do not alter my analysis.

[4] 21 U.S.C. § 343(a).

[5] Cal. Health & Safety Code §§ 109875, 110100, 110660, adopting the federal standards.

1   That regulation provides:

> The labeling of a food which contains two or more ingredients may
> be misleading by reason (among other reasons) of the designation of
> such food in such labeling by a name which includes or suggests the
> name of one or more but not all such ingredients, even though the
> names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18(b). Plaintiff contends that Kellogg "violates this provision in that it designates the Products as 'VEGGIE,' i.e., vegetable, despite that they are primarily composed of non-vegetable ingredients, like wheat gluten and oil." FAC ¶ 42.

Kellogg relies on a line of cases that hold that the packaging statement must convey that the identified ingredients are the "sole" or primary ingredients in a product in order to violate 21 C.F.R. § 101.18(b). For example, in *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010), viewing "each allegedly misleading statement in light of its context on the label and in connection with the marketing of vitaminwater as a whole, [the court could not] conclude as a matter of law that a reasonable consumer could not be misled into believing that vitaminwater is a product that may help maintain healthy dietary practices and fail to appreciate that the product is not solely composed of vitamins and water. The FDA has recognized that product names such as 'vitaminwater' can be deceptive in that such names may mislead consumers into believing the listed ingredients are the sole components of a beverage." *Id*. at *15; *see also Gubala v. Allmax Nutrition, Inc*., No. 14 C 9299, 2015 WL 6460086, at *6 (N.D. Ill. Oct. 26, 2015) (characterizing the regulation as ensuring "a food not be labeled in such a way as to lead consumers to believe that it is made solely of one ingredient when it is made of multiple ingredients."); *Coe v. Gen. Mills, Inc*., No. 15-CV-05112-TEH, 2016 WL 4208287, *2 (N.D. Cal. Aug. 10, 2016) (dismissing claim where "[i]n the absence of any contrary authority, the Court therefore concludes that Cheerios is not an 'ingredient,' and the name 'Cheerios Protein' is not regulated by 21 C.F.R. § 101.18(b).").

The problem plaintiff faces here is that VEGGIE does not plausibly refer to any particular ingredient (unlike "bean burger" or "tofurkey," names that do call out particular ingredients) or even, as discussed above, vegetables as a class of ingredients. The use of Veggie as alleged by

12

plaintiff is not covered by 21 C.F.R. § 101.18(b).[6]

This determination is reinforced by reference to the Product packaging. *See, e.g., Lima v. Post Consumer Brands, LLC*, No. 1:18-CV-12100-ADB, 2019 WL 3802885, at *6 (D. Mass. Aug. 13, 2019) (rejecting § 101.18(b) challenge to "Honey Bunches of Oats" because a "brand name that offers some indication of a product's contents is not, however, necessarily required to list out every ingredient," but also because "consumers who are presented with images or information that would be recognized as ambiguous by a reasonable consumer are generally expected to resolve such an ambiguity by referring to other information on a product's packaging."). Here, the packing does not show, picture, or mention vegetables or make any reference to vegetables or any amount of vegetables being in the product.

### C.     21 C.F.R. § 102.5

21 C.F.R. § 102.5(b) requires that a food product's name "include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b). Plaintiff alleges that Kellogg violates 21 C.F.R. § 102.5(b) "by failing to include the percentage of vegetables in the Veggie Products because its use of 'VEGGIE' in the product names gives the erroneous impression that vegetables are present in a greater amount than is actually the case." FAC ¶ 43.

---

[6] Plaintiff relies on *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *12 (N.D. Ill. Mar. 15, 2016), denying dismissal of a Section 21 C.F.R. § 101.18 claim for a product named "Whey Protein Powder," where "[p]laintiff [] adequately alleged a disputed issue of fact as to whether the Product name is misleading in that it suggests that the protein in the Product is comprised exclusively of pure whey protein, as opposed to whey protein mixed with other non-protein substances." Plaintiff argues that this case supports the allegations here because a reasonable consumer might be misled into thinking that defendant's products "contain only one type of 'plant protein'—'veggies.'" However, plaintiff's theory is not misleading protein content but the misleading use of VEGGIE in the various product names. Plaintiff's reliance on *Reed v. Gen. Mills, Inc.*, No. C19-0005-JCC, 2019 WL 2475706, at *4 (W.D. Wash. June 13, 2019), addressing whether a product name fell within 21 C.F.R. § 101.18(c)(i) (governing product names "generally understood by the consumer to mean the product of a particular manufacturer or distributor"), is similarly misplaced.

This argument presupposes the sufficiency of plaintiff's allegation that VEGGIE refers to the presence of vegetables in the products, as opposed to products that are vegetarian or meat-alternatives. I have rejected that argument above.

## III. BREACH OF WARRANTY

### A. Express Warranty

In California, as relevant to these facts, express warranties are created by:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Cal. Com. Code § 2313(1). Accordingly, plaintiff must prove that "(1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (internal quotation marks omitted).

As noted, at most Kellogg's use of the term VEGGIE is ambiguous. Given that conclusion, the breach claim fails because "[i]n order to constitute an express warranty, a statement must be 'specific and unequivocal.'" *Turner v. Sony Interactive Ent. LLC*, No. 21-CV-02454-DMR, 2021 WL 5177733, at *1 (N.D. Cal. Nov. 8, 2021) (quoting *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997)). An ambiguous statement is insufficient to create an express warranty.

### B. Implied Warranty

Plaintiff contends that Kellogg violates the implied warranty of merchantibility. Under California law, the implied warranty of merchantability can be violated if (1) the product is not "fit for the ordinary purposes for which such good [is] used," or (2) does not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2); *see, e.g., Hauter v. Zogarts*, 14 Cal.3d 104, 118 (1975). Kellogg argues that a breach of the implied warranty of merchantability exists only where the product is not fit for its ordinary purpose, meaning the product "did not possess even the most basic degree of fitness for ordinary

14

use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 406 (2003). Because there is no argument that its Products are not fit for consumption or are not in fact vegetarian/meat substitutes, the products cannot breach the implied warranty of merchantability under this theory.

Plaintiff does not argue that the Veggie Products are not "fit for the ordinary purpose." Instead, she contends that she and the other putative class members "did not receive goods as impliedly warranted by Kellogg to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods." FAC ¶ 107. This type of implied warranty claim, however, rises and falls with her express warranty claims. *See Hendricks v. StarKist Co.*, 30 F.Supp.3d 917, 933 (N.D. Cal. 2014) (applying the same analysis to the "[c]onforms to the promises or affirmations of fact" analysis as to the express warranty analysis); *see also Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017). Because the express warranty claim fails as a matter of law, so does plaintiff's implied warranty claim.

## IV.   EQUITABLE RELIEF

Finally, Kellogg moves to dismiss plaintiff's claim for equitable relief – restitution under the FAL and UCL and injunctive relief – because plaintiff has failed to allege facts demonstrating the inadequacy of her claims for damages under the CLRA and breach theories such that she could proceed with her equitable UCL claim. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("Sonner must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."). I need not reach this argument because I have found that plaintiff's misrepresentation and illegality claims fail as a matter of law. There are no bases left on which to allege a violation of the UCL.

## CONCLUSION

For the foregoing reasons, plaintiff's FAC is DISMISSED. As plaintiff has been given ample opportunity to allege additional facts in support, and as I have rejected her theories as

implausible and otherwise not actionable, dismissal is WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: September 14, 2022



William H. Orrick
United States District Judge